Argued and submitted September 4, 1991, affirmed June 3, reconsideration denied
July 29, petition for review denied September 29, 1992 (314 Or 392)

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN R. PAINTER,
*Appellant.*

(88C-21477, 88C-22241, 90C-21207;
CA A68262 (Control), A68263, A68264)
(Cases Consolidated)

833 P2d 303

Gary D. Babcock, Salem, argued the cause and filed the brief for appellant.

Carol J. Fredrick, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Rossman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his convictions for attempted rape in the first degree and attempted kidnapping in the first degree. ORS 161.405; ORS 163.375; ORS 163.235. He assigns as error the trial court's admission of evidence of prior bad acts and crimes under OEC 404(3). We affirm.

On the morning of September 16, 1990, Mandan, age 14, walked past defendant's truck that was parked in K-Mart's parking lot on Portland Road in Salem. She was a student at Chemawa Indian School, which is located in the general area. As Mandan passed defendant's truck, he called her over and asked her to take a ride with him. When she refused, he reached through the car window, grabbed her by her shirt and head and ordered her into the car. She struggled and freed herself. She reported the incident to her school and other authorities.

At trial, the state called as a witness a former Chemawa Indian School student, Benson. She testified that, when she was a student, she and her school friends would meet defendant at the K-Mart parking lot and that he would take them shopping for clothes, take them to his house and give them alcohol and drugs. She also related one incident when defendant asked her to come alone to his house. At the house, he told her that if she did not do as she was told she would not be able to return to school to see her friends and that he had guns in the closet and would use them if she did not cooperate. Because she was afraid, she had intercourse with him at that time. After that, she had intercourse with him several times in exchange for drugs and alcohol. Benson testified that defendant was convicted on a criminal charge involving his conduct with her.

The state also presented the testimony of two police officers. Officer King, who had interviewed defendant in 1988 regarding the incidents with Benson, testified that defendant had admitted knowing a number of students at Chemawa Indian School. Defendant told King that they would clean house and cook for him in exchange for shopping trips. When asked if he would "pick up girls," defendant responded that he had "picked up dozens of them, dozens of them," and that

he liked to pick them up at the K-Mart on Portland Road. He also told King, "I have a lot of fun with them Indian girls."

Officer Okada interviewed defendant on September 20, 1990, as part of his investigation of Mandan's complaint. Defendant was evasive and changed his story several times regarding where he was and what he did on the morning of September 16. He finally admitted that he had contacted a young girl in the K-Mart parking lot but claimed that he only gave her money. He denied trying to get her to ride with him. Defendant also admitted to Okada that he had been acquainted with some of the students of Chemawa Indian School and that he was on probation "because he was accused of having sex with some of the girls from the Indian School." He also admitted having had intercourse with one of the students.

The state did not offer any evidence of defendant's having previous sex offense convictions. The only mention of any convictions in the record is from Benson, which was drawn out by defense counsel on cross-examination, and from Okada, when he testified that defendant had admitted to him that he was on probation for a sex offense conviction involving a Chemawa student.

■ Defendant moved to exclude all evidence regarding his conduct involving Benson and the other Chemawa students. The trial court denied the motion, holding that the evidence was admissible under OEC 404(3).[1] That rule forbids the admission of evidence of prior bad acts or crimes if it is offered solely to show that, "because the accused is a person of criminal character it is more probable that the accused committed the crime for which he or she is on trial." *State v. Johnson*, 313 Or 189, 194, 832 P2d 443 (1992). However, OEC 404(3) is a rule of inclusion that allows the admission of any evidence that is logically relevant, so long as it does not run afoul of the "propensity to commit crimes or other acts"

---

[1] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

prohibition. *State v. Johns,* 301 Or 535, 548, 725 P2d 312 (1986).

The trial court held that the evidence of defendant's prior bad acts and crimes involving the other girls was relevant to proving defendant's intent, which was an essential element of the crimes for which he was charged—attempted first degree rape and attempted first degree kidnapping. *See State v. Walters,* 311 Or 80, 84 n 5, 804 P2d 1164, *cert den* ___ US ___, 111 S Ct 2807 (1991).

As explained in *State v. Johns, supra,* 301 Or at 555, in evaluating the relevance of prior bad acts evidence on the issue of intent, the court should make these determinations:

"(1)   Does the present charged act require proof of intent?

"(2)   Did the prior act require intent?

"(3)   Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4)   Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5)   Were the physical elements of the prior act and the present act similar?"

Defendant does not argue that the first three criteria are not satisfied. Rather, he contends that evidence regarding his previous conduct with Benson and the other girls is not relevant, because that conduct was "totally dissimilar" to the present case. He argues that, because he used force on Benson only once, and she willingly had intercourse with him thereafter, as did the others, the evidence had no relevancy as to what he intended to do with Mandan. However, as also explained in *State v. Johns, supra,* 301 Or at 551:

"Intent or state of mind is often the most difficult element of a crime to prove because many crimes are unwitnessed and even if a witness is present, the witness can only surmise the actor's state of mind * * * and therefore courts very liberally admit the prior crime evidence to prove *mens rea.*"

We conclude that the evidence of defendant's conduct with Benson and the other girls and the evidence that defendant tried to force Mandan to go with him were sufficiently similar to allow a jury to infer that defendant intended to attempt to

kidnap and rape Mandan. *See State v. Walters, supra,* 311 Or at 84 n 5.

Moreover, defendant's prior bad conduct was probative to show motive or plan, both of which are proper under OEC 404(3). Defendant's history of picking up girls at the K-Mart parking lot demonstrates his motive for selecting Mandan. He denied trying to lure her into his truck, claiming that he only gave her money. The evidence that he routinely took other girls to his house for sexual purposes was relevant to show what defendant planned for Mandan once he had her in his truck. The trial court did not err in concluding that the evidence of defendant's prior bad acts was admissible under OEC 404(3).

■ Defendant also argues that the evidence was not admissible under OEC 403, because its prejudicial effect outweighed its probative value.[2] As explained in *State v. Mayfield,* 302 Or 631, 733 P2d 438 (1987), in deciding whether evidence is admissible under OEC 403, the trial court should take four steps:

> "First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence." 302 Or at 645.

The state needed the prior conduct evidence. The only direct evidence as to what occurred on September 16 came from Mandan and defendant. Defendant denied that he

---

[2] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentations by cumulative evidence."

attempted to get Mandan into his truck. The state needed to show what defendant was doing sitting in the K-Mart parking lot and why he would have tried to abduct Mandan. Without the prior conduct evidence, that would be difficult to prove. Moreover, proof of first degree rape requires a showing of forcible compulsion. The conduct of defendant with Benson demonstrates that he was willing to use force for sexual purposes and tends to prove that he intended to do that with Mandan.

The prior conduct evidence was prejudicial, because it could distract the jury's focus from what actually occurred in this case. The trial court determined here, however, that the state's need for the evidence outweighed its potential for prejudice. We conclude that the trial court did not abuse its discretion in making this determination and admitting the evidence.[3]

Affirmed.

---

[3] The trial court also gave a limiting instruction on how the jury should view the evidence:

"There's been testimony about certain prior bad acts allegedly committed by the Defendant against other persons. The fact that you have heard such testimony does not mean that these acts in fact occurred. You are instructed that you may not consider these prior bad acts in your deliberations as evidence that the Defendant is guilty of the crimes charged in this case. The prior bad acts are only to be considered by you if you so desire, as evidence of the Defendant's motive, identity, intent, preparation, knowledge, or plan so far as it is relevant to this case."