**STATE *v.* TAYLOR.**

84 Pac. 82.

ATTEMPT TO COMMIT CRIME*—OVERT ACTS.

The paying of money to another as compensation for his assistance in committing a crime, the providing of means appropriate to the desired purpose, and

---

* NOTE.—See an extensive annotation to *People* v. *Moran*, in 20 Am. St. Rep. 741-748, The Crime of Attempting to Commit a Crime; and in 10 L. R. A. 109, Attempt to Commit a Crime as a Crime. See, also, 93 Am. St. Rep. 600, and 59 L. R. A. 598.          REPORTER.

the giving of directions concerning the time and manner of committing the crime, are acts that constitute an attempt to commit the crime, under Section 2159, B. & C. Comp.: *State* v. *Hull,* 33 Or. 56, distinguished.

From Umatilla: WILLIAM R. ELLIS, Judge.

Moses Taylor appeals from a conviction of attempted arson. The facts are stated in the opinion. AFFIRMED.

For appellant there was a brief over the names of *Carter, Raley & Raley,* and *Peterson & Peterson,* with an oral argument by *Mr. James Henry Raley* and *Mr. William McDowell Peterson.*

For the State there was a brief over the names of *Gilbert Walter Phelps,* District Attorney, and *John McCourt,* with an oral argument by *Mr. Andrew Murray Crawford,* Attorney General, and *Mr. Phelps.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

Section 2159, B. & C. Comp., reads:

"If any person attempts to commit any crime, and in such attempt does any act towards the commission of such crime, but fails or is prevented or intercepted in the perpetration thereof, such person, when no other provision is made by law for the punishment of such attempt, upon conviction thereof shall be punished," etc.

Under the provisions of this section the defendant, Taylor, was indicted, and convicted of an attempt to commit the crime of arson. The proof was that he entertained an enmity against John Bannister, one of his neighbors, because of some testimony Bannister had given in a divorce suit. Apparently for revenge, he desired to burn and destroy Bannister's barn and wheat. He solicited one McGrath to do the burning, who, in turn, asked one Palmer to assist in the commission of the crime. Palmer informed his employer, a friend of Bannister's, of the proposed plan, and was advised to allow the matter to proceed, and that arrangements would be made to apprehend the parties.

After some preliminary negotiations Taylor, McGrath and Palmer met in the back room of a saloon in Athena on July 30, 1904, and Taylor there engaged McGrath and Palmer to burn Bannister's barn and wheat, agreeing to pay them $100 for so doing, and at the same time showed them how to start a slow burning fire with a pair of overalls, saying he had tested it. After the conference at the saloon the parties separated, agreeing to meet that night about 12 o'clock at Taylor's place, from which McGrath and Palmer were to start to Bannister's for the purpose of consummating the crime. Palmer advised Bannister's friends of what was about to take place, and they made arrangements to lie in wait and intercept the parties. At the appointed time Palmer went to Taylor's place and there met Taylor and McGrath, who were waiting for him. Taylor had his own horse saddled and ready for McGrath to ride. He produced a pair of overalls, and after again showing McGrath and Palmer how to use them in starting a fire tied them on the saddle of his horse and paid McGrath $100 in money. McGrath and Palmer then started towards Bannister's with the purpose, so Taylor supposed and believed, of setting the fire, with a parting expression from him of "Good luck go with you." Taylor "laid awake two hours to see the fire," but as McGrath and Palmer were going towards Bannister's they noticed fresh tracks in the road, and when they approached within 20 feet of the barn observed two or three buggies in the barnyard, which frightened McGrath, who was afraid to go on with the enterprise for fear they were being watched, and so it was abandoned. McGrath and Palmer were both witnesses for the prosecution. Palmer testified that he never had any intention of committing the crime, and McGrath said that he did not intend to set the fire, but that the arrangement was that it should be started by Palmer. Upon these facts the question for decision is

whether the defendant was legally convicted of an attempt to commit the crime of arson.

The question as to what constitutes an attempt to commit a crime is often intricate and difficult to determine, and no general rule has been or can be laid down which can be applied as a test in all cases. Each case must be determined upon its own facts, in the light of certain principles which appear to be well settled. An attempt is defined as an "intent to do a particular criminal thing, with an act toward it falling short of the thing intended": 1 Bishop, New Crim. Law, § 728. Or, according to Wharton: "An attempt is an intended apparent unfinished crime": 1 Wharton, Crim. Law (9 ed.), § 173. Another author says: "An attempt to commit a crime is an act done in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, and possessing, except for failure to consummate, all the elements of the substantive crime:" 3 Am. & Eng. Enc. Law (3 ed.), 250. An indictable attempt, therefore, consists of two important elements: First, an intent to commit the crime; and, second, a direct, ineffectual act done towards its commission. To constitute an attempt, there must be something more than a mere intention to commit the offense, and preparation for its commission is not sufficient. Some overt act must be done toward its commission, but which falls short of the completed crime. It need not be the last proximate act before the consummation of the offense, but it must be some act directed toward the commission of the offense after the preparations are made. It is often difficult to determine the difference between preparation for the commission of a crime and an act towards its commission. There is a class of acts which may be done in pursuance of an intention to commit a crime, but not, in legal sense, a part of it, and do not constitute an indictable attempt, such as the pur-

chase of a gun with the design of committing murder, or the procuring of poison with the same intent. These and like acts are considered in the nature of mere preliminary preparation, and not as acts toward the consummation of the crime. It is upon this principle that most of the cases cited by the defendant rest, although some of them seem to have carried the doctrine to the utmost limit: *Patrick* v. *People*, 132 Ill. 529 (24 N. E. 619); *McDade* v. *People*, 29 Mich. 50; *People* v. *Youngs*, 122 Mich. 292 (81 N. W. 114, 47 L. R. A. 108); *State* v. *Lung*, 21 Nev. 209 (28 Pac. 235, 37 Am. St. Rep. 505); *Stabler* v. *Commonwealth*, 95 Pa. 318 (40 Am. Rep. 653); *Hicks* v. *Commonwealth*, 86 Va. 223 (9 S. E. 1024, 19 Am. St. Rep. 891); *State* v. *Baller*, 26 W. Va. 90 (53 Am. Rep. 66).

In the case at bar we have something more than mere intention or preparation, so far as the defendant is concerned. His part in the transaction was fully consummated when he employed McGrath and Palmer to commit the offense, gave them the materials with which to do it, showed them how to start a slow burning fire, paid them a compensation for their services, furnished a horse for one of them to ride, and started them on their way. He had thus done all that he was expected to do, and his felonious design and action was then just as complete as if the crime had been consummated, and the punishment of such an offender is just as essential to the safety of society. The failure to commit the crime was not due to any act of his, but to the insufficiency of the agencies employed for carrying out his criminal design. One may commit a crime by his own hand or that of another, employed, aided or encouraged by him. If he endeavors or attempts to commit it himself, and is interrupted or frustrated, he would clearly be guilty of an indictable attempt, and, if he uses another person to accomplish the same purpose, and the other fails to carry out his design, whether pur-

posely or otherwise, the result is the same: *State* v. *Bowers*,
35 S. C. 262 (14 S. E. 488, 15 L. R. A. 199, 28 Am. St. Rep.
·847). The statute under which the defendant was indicted
was probably taken from that of the State of New York.
It had received a judicial construction in that State long
before it was enacted here. In *People* v. *Bush*, 4 Hill, 133,
·decided in 1843, the defendant was indicted for an attempt
to commit the crime of arson. The proof was that he re-
·quested one Kinney to set fire to a barn, gave him a match
for that purpose, and promised to reward him. The court
held the conviction legal, although the defendant never in-
·tended to be present at the commission of the offense and
Kinney never intended to commit it, Mr. Justice Cowen
saying: "The act imputed to Bush was no doubt an attempt
to commit an offense. It is admitted that he endeavored
to make himself an accessory before the fact; and to be-
·come an accessory is, in itself, an offense. A mere solici-
tation to commit a felony is an offense, whether it be actu-
ally committed or not. This was held in the *King* v. *Hig-
gins*, 2 East, 5. In the case before us there was more.
The solicitation was followed by furnishing the instru-
ment of mischief. The question of principal and acces-
sory does not arise, as it would have done provided the
crime had actually been committed. Had it been com-
mitted, the attempt would have been merged in an actual
felony—a crime of another species. There would have
been a principal arson by Kinney and an accessorial
·offense by Bush. The attempt of the latter was to have
both crimes committed, and, the question of principal
and accessory not being in the case, I see nothing against
·considering the matter in the light of the ordinary rule
that what a man does by another he does by himself; in
other words, the course taken to commit the arson by the
hand of Kinney was the same thing, in legal effect, as if

Bush had intended to set the fire personally, and had taken steps preparatory to that end."

The same principle was again applied in *McDermott* v. *People*, 5 Parker, Cr. R. 102. In that case the defendant solicited another to commit the crime of arson, offering in consideration thereof to deed and assign over to him certain property, and said he had camphene and other combustibles in his room. The court held the defendant properly convicted of an attempt to commit arson, saying: "The two important and essential facts to be established to convict a person of an offense are, first, an intent to commit the offense; and, second, some overt act consequent upon that intent towards its commission. So long as the act rests in bare intention, it is not punishable. 'Cogitationis pœnam nemo patitur.' It is only when the thought manifests itself by an outward act in or toward the commission of an offense that the law intervenes to punish. As we cannot look into the mind and see the intent, it must, of necessity, be inferred from the nature of the act done, and, if that be unlawful, a wicked intent will be presumed. These are fundamental legal principles. Now, applied to the facts of this case, what do we find? We find that the defendant intended to commit the crime of arson. Indeed, he had committed the offense 'already, in his heart.' What were the overt acts toward the commisson? He had prepared camphene and other combustibles, and had them in his room, and then he went a step further and solicited McDonnell to use those combustibles to burn the building, promising him, if he would do so, to 'give him the deeds of the place, and assign to him his right in the same.' We have, then, the fixed design of the defendant to burn this barn, and overt acts toward the commission of the offense, and a failure in the perpetration of it. The offense, then, is fully made out, for the intent to do the wrongful act, coupled with the

overt acts toward its commission, constituted the attempt spoken of by the statute." These cases and the doctrine upon which they are grounded have been recently reaffirmed in *People* v.*Gardner*, 144 N. Y. 119 (38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741); and *People* v. *Sullivan*, 173 N. Y. 122 (65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582).

Missouri has a similar statute. In *State* v. *Hayes*, 78 Mo. 307, the defendant solicited one McMahan to set fire to a building, furnished him a can of oil for the purpose, and gave him instructions for the burning. The court held that he was properly convicted of an attempt, although McMahan was acting under the advice of the police, and did not himself intend to commit arson. The court said: "The evil intent which imparts to the act its criminality must exist in the mind of the procurer. And how the fact that the party solicited does not acquiesce or share in the wicked intent, exonerates the solicitor, baffles reason."

The State of Georgia has a statute likewise taken from New York. In *Griffin* v. *State*, 26 Ga. 493, the New York cases are approved. The defendant intended to commit the crime of larceny by abstracting goods from a storehouse through the agency of one Jones. He took an impression of the key to the door of the building, and made a key for the purpose of opening it, which he sent in a box of fruit to Jones, who feigningly agreed to become a participant in the accomplishment of the contemplated crime. It was held that the defendant was guilty of an attempt to commit the crime, and that Jones' intent had nothing to do with his offense.

The statute of Massachusetts provides that "whoever attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense," shall be punished as therein provided. In *Commonwealth* v. *Peaslee*, 177 Mass. 267 (59 N. E. 55), the evi-

dence was that the defendant had arranged combustibles in a building in such a way that they were ready to be lighted, and, if lighted, would have set fire to the building and contents. The plan, however, required a candle which was standing on a shelf about six feet away from the combustibles to be placed on a piece of wood in a pan of turpentine and lighted. The defendant offered to pay a young man in his employment if he would go to the building, seemingly some miles from the place of the dialogue, and carry out the plan. This was refused. Later the defendant and the young man drove toward the building, but, when within about a quarter of a mile of the place, defendant said he had changed his mind and drove away. This was the only act he ever did toward accomplishing what he had in contemplation, and yet the court held that it was sufficient to convict him of an attempt to burn the building and its contents with the intent to injure the insurers of the same.

We conclude, therefore, that the conviction of the defendant was right, and the judgment will be affirmed.

AFFIRMED.

---

Decided 30 January, 1906.
ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE BEAN delivered the opinion.

The doctrine of *State* v. *Hull*, 33 Or. 56 (54 Pac. 159, 72 Am. St. Rep. 694), and similar cases, has no application to the facts of this case. That was an indictment for larceny. The representative of the owner of the property alleged to have been stolen solicited the defendants to commit the offense. The property was taken by them by the express direction of the owner and with his assent. There was, therefore, no trespass in the taking and no crime committed. Here, however, the defendant, Taylor, planned the alleged arson and solicited McGrath and

Palmer to assist him in its commission. Palmer informed his employer of the proposed plan and was advised to join Taylor and McGrath in appearance. This did not excuse Taylor for what he did personally: 1 Bishop Crim. Law (5 ed.), § 262. The petition is denied.

AFFIRMED: REHEARING DENIED.

MR. JUSTICE HAILEY took no part in the consideration of this case.