Argued and submitted May 4, 1990, the decision of the Court of Appeals reversed and the judgment of the circuit court affirmed January 17, reconsideration denied March 5, 1991

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# ROGER MATTHEW WALTERS,
*Respondent on Review.*

(TC CM87-0328; CA A47119; SC S36898)

804 P2d 1164

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for petitioner on review. On the petition were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem.

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for respondent on review.

UNIS, J.

## UNIS, J.

The issue in this criminal case is whether there was sufficient evidence from which the jury could find defendant guilty of attempted[1] kidnapping in the first degree,[2] attempted rape in the first degree,[3] and attempted sodomy in the first degree.[4] The Court of Appeals held that the evidence was sufficient to support a conviction only for attempted kidnapping in the second degree, ORS 163.225, and "[r]eversed and remanded with directions to enter judgment of conviction for attempted kidnapping II only; to resentence defendant; and to conduct a new dangerous offender hearing." *State v. Walters,* 99 Or App 570, 577, 783 P2d 531 (1989). We reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

■ In judging the sufficiency of the evidence, this court views the evidence in the light most favorable to the party in whose favor the verdict was rendered, in this case the state, accepting reasonable inferences and reasonable credibility choices that the jury could have made. *State v. Krummacher,*

---

[1] ORS 161.405(1) provides:

"A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

[2] ORS 163.235 provides in part:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"* * * * *

"(c) To cause physical injury to the victim[.]"

ORS 163.225 provides in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another[.]"

[3] ORS 163.375 provides in part:

"(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male[.]"

[4] ORS 163.405 provides, in relevant part:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"(a) The victim is subjected to forcible compulsion by the actor[.]"

269 Or 125, 137-38, 523 P2d 1009 (1974). "Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury to so find." *Id.* at 138. Therefore, we summarize the evidence with those principles in mind.

Defendant approached the intended victim, a 13-year-old girl, at a neighbor's garage sale. He asked her if she had seen his lost dog, which he described as a white German Shepherd with a black chest, and told her that the dog was worth a lot of money. Defendant then asked her to show him the area and help him search for the dog. When she refused, he offered her $10, then $20, then $30 when she continued to refuse. The intended victim then started toward her bicycle, which was parked nearby, refused defendant's offer to drive her home in his truck, and returned home on her bicycle.

Defendant followed the girl back to her house, where another garage sale was being conducted by her family. She told her mother what had happened, and her mother called the police. During this time, defendant was looking at items for sale in the yard. He approached the girl's mother and asked her about a bowling ball. Suddenly, in a different tone of voice, he said that he had a girlfriend. Defendant then asked about other items and, again in a different tone of voice, asked the mother if she had a daughter. Defendant paid for the bowling ball and some place mats and stated, out of context, that he had lost a dog.

A police officer arrived and spoke with defendant. Defendant admitted offering the girl $10 to get into his truck and said that he had been released from the penitentiary several months earlier. The officer learned that defendant was a convicted sex offender and confronted him with that information. Defendant stated that his "intentions were to have her get in my car and help me find my dog." When asked by the officer whether he was sexually attracted to the girl, defendant said, after a long pause, "I could have found myself in an uncomfortable position today and didn't mean to." Later, he told the officer that the girl was "13 going on 24" and that he "thought she was a lot older than 13." Defendant did not own a dog.

At trial, evidence of the details of defendant's conviction in 1981 for rape in the first degree was admitted as proof

of defendant's intent in the present incident. *See* OEC 404(3).[5] In the 1981 incident, defendant approached a 13-year-old girl and asked if she had seen his lost dog, which he described as a white German Shepherd. He offered her $20 to help him search for the dog, which she refused. Defendant then forced her into his car and took her to his trailer, where he raped and sodomized her. Defendant did not own a dog in 1981.

■ In order to be guilty of an attempt to commit kidnapping in the first degree, attempt to commit rape in the first degree, and attempt to commit sodomy in the first degree, defendant must (1) *intentionally*[6] engage in conduct that (2) constitutes a *substantial step* toward the commission of each of those crimes. ORS 161.405. For the reasons that follow, we conclude that there was sufficient evidence from which a rational factfinder could find that those elements were proved beyond a reasonable doubt.

■ First, there was evidence from which the jury could infer that defendant *intended* to kidnap, rape, and sodomize the girl. As previously stated, six years earlier, defendant had approached a 13-year-old girl and had asked her to search for a nonexistent white German Shepherd. When that ploy failed, he offered her $20. He then kidnapped her, took her to his home, and forcibly raped and sodomized her. In this case, defendant used the identical ploys to entice this 13-year-old girl into his truck. He approached her and asked her to help him search for a nonexistent white German Shepherd, then offered her money. The jury reasonably could infer from that evidence that defendant possessed the identical intent to

---

[5] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

There is no question that the evidence of the 1981 crime was admissible as proof of defendant's intent in the present incident. *See State v. Johns*, 301 Or 535, 725 P2d 312 (1986) (stating principles for admissibility of prior crime to prove intent).

[6] ORS 161.085(7) provides:

" 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described."

kidnap, rape, and sodomize this girl when he sought to entice her into his truck. In addition, his remarks to the police officer that he "could have found [himself] in an uncomfortable position today and didn't mean to" and that the victim was "13 going on 24," his nervousness when talking with the girl's mother, and his use of inconsistent speech patterns when he spoke of his girlfriend and when he asked the mother if she had a daughter are telling of the criminal purposes of defendant's encounter with the intended victim.

Having concluded that the jury was entitled to find that defendant had a conscious objective (ORS 161.085(7)) to engage in the three charged crimes, we turn to the more troublesome question whether there is sufficient evidence from which the jury could find that defendant's conduct constituted a *substantial step* toward the commission of each of those crimes.

ORS 161.405 codifies the Model Penal Code's "substantial-step" test[7] for distinguishing acts of preparation from an attempt.[8] "In § 5.01(2), the Model Penal Code states that to be a substantial step the act must be 'strongly corroborative of the actor's criminal purpose[,]' " Commentary to the Oregon Criminal Code of 1971, § 54, at 49, *i.e.,* defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose. Model Penal Code and Commentaries (Official Draft and Revised Comments), American Law Institute 352, § 5.01 (1985). We note that the Model Penal Code specifies a number of situations that "shall not be held insufficient as a matter of law" if they are strongly corroborative of the actor's criminal purpose. One of those situations is enticement. *Id.,*

---

[7] *See* Model Penal Code § 5.01(1)(c) (Proposed Official Draft 1962).

[8] Before the adoption of the "substantial-step" test, Oregon law defined an attempt to commit a crime as "an act done in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, *and possessing,* except for failure to consummate, *all the elements of the substantive crime." State v. Moore,* 194 Or 232, 242, 241 P2d 455 (1952) (emphasis in original). That is no longer the test. The substantial-step test includes, as an "attempt," conduct that is more remote from the attainment of the criminal objective than was the case under prior Oregon law. Criminal Law Revision Commission Minutes, December 13, 1969 (Professor Platt stated that the substantial-step test "would tend to move back the line between preparation and attempt to allow the police authorities to intervene sooner than under present [Oregon] law").

5.01(2)(b), at 296 ("enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission"). *See* Commentary to the Oregon Criminal Code of 1971, § 54, at 49 (same principle stated).

Applying the statutory standard to the facts of the present case, we conclude that defendant's persistent efforts to entice the intended victim into his truck, his following the girl, and his statements to the police officer and to the girl's mother strongly corroborate his criminal purpose to kidnap, rape, and sodomize the 13-year-old girl.[9] We hold, therefore, that there was sufficient evidence from which the jury could find beyond a reasonable doubt that defendant's conduct constituted a substantial step toward the commission of each of the charged crimes.

The decision of the Court of Appeals is reversed; the judgment of the circuit court is affirmed.

---

[9] This case illustrates the proposition that the same conduct may constitute a substantial step toward the commission of more than one charged crime, as long as that conduct strongly corroborates the actor's criminal purpose underlying each charged crime.