BALMER, J.
**68 Criminal law has long encompassed what are sometimes known as "inchoate" crimes-"A step toward the commission of another crime, the step in itself being serious enough to merit punishment." Black's Law Dictionary 1250 (10th ed. 2014). This case concerns the intersection of two of those crimes, solicitation *78 and attempt. "Solicitation" occurs when a person "commands or solicits" another to commit or attempt to commit a crime, ORS 161.435, and "attempt" occurs when a person "intentionally engages in conduct which constitutes a substantial step toward the commission of [a] crime," ORS 161.405.[1]
Defendant wished to have people killed and witnesses scared, so he sought to engage a hitman. For that, he was charged with and found guilty of several counts of attempted solicitation of aggravated murder and attempted solicitation of murder, which he has not challenged on appeal. But could he also be convicted of attempting to commit the substantive crimes that he wanted the hitman to commit? After reviewing the text and history of Oregon's attempt statute, we conclude that he could not.
I. FACTS
In August 2012, defendant was arrested on a charge of burglary in Wasco County. He was held in jail pre-trial. Defendant told his cellmate, Crowley, that he wanted two witnesses in his burglary case "not to show up to trial." Defendant also told Crowley that he wanted three people killed: defendant's brother-in-law; defendant's father-in-law; and the Wasco County District Attorney, who was personally prosecuting the burglary case against defendant. Defendant asked Crowley if he knew anyone who had "killed someone before." Crowley responded that he did and suggested that he had an acquaintance who could carry out defendant's killings.
Defendant wrote a letter, addressed to the unknown hitman. The letter read:
**69 "Dear stranger,
"I have a job for you. I need your help. There are three people I need taken care of. First one is my father-in-law. * * * Second is my brother-in-law. * * * The third is the D.A. (District Attorney). He is a piece of shit, and tears families apart. He is just as crooked as the cops in this town. Like for example; I'm in here on a Burg I charge. I was trying to get cans for money. To feed my family. My wife and I are homeless living out of the back of a 1992 Suburban, know they are trying to charge her with Burg I also. All she did is drive the vehicle, and had no part of grabbing the cans. He has also a hand in the court-appointed attorneys. [Father-in-law] is leaving town October 15 for two [and a] half weeks.
"[Father-in-law]-Age 64-address [father-in-law's address]-health-bad-has had a triple bypass 15 years ago-takes handful of pills a day. (Dead) Net worth 150,000 to 200,000 dollars + life insurance policy. Not sure value.
"[Brother-in-law]-Age 36-address-halfway house in Oregon or Washington/Life insurance 100,000 to 150,000. He is a recovering meth addict. Liked doing meth through a syringe. (Dead)
"D.A. (District Attorney)-[D.A.'s full name]-Age 40s-(Dead)-[D.A.'s Oregon State Bar number].
"Witnesses in my and my wife's Burg I case. I just want them threatened.
"1) [Witness's name, address, telephone number, and date of birth]
"2) [Second witness's name, address, telephone number, and date of birth]
"There are three other safes in the house. I want you to get the stuff out of the safe. You can hang on to the stuff in the safe until you are paid. There are also my three dogs at the house.
"* * * * *
"Stuff in safes
"1) Guns
"2) Car titles/1968 Dodge Charger RT/Value 150,000 easy **70 "3) Jewelry
"4) Life Insurance Info
"5) Money
"Final bill = 80,000 I will be paying you.
"[Father-in-law]-Natural death-Heart attack
"[Brother-in-law]-Drug od
"D.A.-your choice."
Defendant included a map of his father-in-law's house with the letter. The map contained some errors but one witness described *79 it as a "very, very close" match to the layout of the house, and defendant's father-in-law testified that it was a "pretty accurate" representation of his house. Rooms were labeled, and the locations of the safes were marked. Defendant hesitated to give these materials to Crowley. After asking Crowley whether he was a cop-Crowley responded that he was not-defendant gave the letter and the map to Crowley, with the understanding that Crowley would pass them on to the hitman.
As the days went by, defendant repeatedly asked Crowley when the hitman would be coming and when the murders would be carried out. Defendant and Crowley were placed in separate isolation cells but communicated by passing notes. Defendant continued to ask when the hitman was coming, expressed interest in meeting him, and reaffirmed his commitment to having the district attorney killed.
The reason for the delay was that Crowley did not know a hitman and had not contacted one. Instead, Crowley had reached out to jail staff soon after defendant told Crowley that he wanted to have people killed. Crowley had expressed concern that defendant was dangerous. Crowley had given the letter and map that defendant had produced, as well as the notes that defendant had passed to Crowley, to law enforcement. Defendant was charged with four counts of attempted aggravated murder, four counts of solicitation of aggravated murder, three counts of attempted murder, three counts of solicitation of murder, and two counts of tampering with a witness.
**71 The case was tried to the court. At trial, defendant moved for a judgment of acquittal on the attempted aggravated murder, attempted murder, and tampering with a witness charges.[2] Defendant argued that the state had failed to present evidence that defendant's conduct was a "substantial step" toward the substantive crimes, which is required for his conduct to constitute an attempt. The state argued that the evidence that had been presented was sufficient. The court denied the motion. Defendant also moved for a judgment of acquittal on the seven solicitation charges. The court granted that motion, but allowed the state to proceed against defendant on the lesser included counts of attempted solicitation of aggravated murder and attempted solicitation of murder. The trial court found defendant guilty on all remaining counts: Four counts of attempted aggravated murder, three counts of attempted murder, two counts of tampering with a witness, four counts of attempted solicitation of aggravated murder, and three counts of attempted solicitation of murder.[3]
Defendant appealed, assigning error only to the trial court's denial of his motion for a judgment of acquittal on the attempted aggravated murder, attempted murder, and witness tampering counts. In the Court of Appeals, defendant renewed the arguments he had made at the trial court, and the state responded as it had before. The Court of Appeals determined that defendant's actions did rise to the level of a substantial step and affirmed defendant's convictions. To reach that conclusion, the Court of Appeals relied **72 on State v. Taylor , 47 Or. 455, 84 P. 82 (1906), noting that "defendant's actions exceeded mere preparation because defendant had done all that he could have done under the circumstances to cause the murders of his intended victims." State v. Kimbrough , 285 Or. App. 84, 90, 395 P.3d 950, rev. allowed , 362 Or. 38, 403 P.3d 781 (2017). *80 II. INCHOATE CRIMES
Before this court, defendant makes two different arguments. First, he argues that, because the hitman that defendant attempted to hire did not exist, his efforts to solicit a hitman to commit various crimes did not make the commission of any of those crimes more likely and thus could not constitute a substantial step required for an attempt. Second, defendant argues that, as a general rule, mere solicitation cannot constitute an attempt. In support of this argument, he relies on commentary from the 1970 Commission that redrafted Oregon's Criminal Code and was the source of Oregon's current attempt and solicitation statutes. This case thus presents a question of statutory interpretation and requires us to consider the statutes defining the crimes of solicitation and attempt, as well as the relationship between those crimes and several related statutory provisions. We do so by examining the text, context, and legislative history of those statutes. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). We begin with the texts of the attempt and solicitation statutes and then delve more deeply into the development of those statutes as we discuss defendant's arguments on review.
The crime of attempt is set out in ORS 161.405, which provides in part:
"(1) A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."
That text was enacted in 1971 and drew heavily from the Model Penal Code, particularly with respect to its use of the term "substantial step." See Or. Laws 1971 ch. 743, § 54; Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, **73 § 54, 51-52 (July 1970). ORS 161.405 replaced an existing attempt statute, former ORS 161.090 (1969).
The present solicitation statute also was added to the criminal code in 1971. Or. Laws 1971, ch. 743, § 57. Unlike the attempt statute, it did not reformulate an existing crime, but created an entirely new offense. Commentary, § 59 at 57. Under the relevant statute, ORS 161.435(1), "[a] person commits the crime of solicitation if with the intent of causing another to engage in specific conduct constituting a crime * * * or an attempt to commit such [crime] the person commands or solicits such other person to engage in that conduct."
Together with criminal conspiracy, defined in ORS 161.450, attempt and solicitation are classified as inchoate offenses, because they may result in a conviction even when no substantive crime has been completed. The relationship between those three inchoate offenses is governed in part by ORS 161.485(2), which provides that "[a] person shall not be convicted of more than one offense defined by ORS 161.405 [attempt], 161.435 [solicitation] and 161.450 [conspiracy] for conduct designed to commit or to culminate in commission of the same crime." However, the same statute permits an individual to be charged with multiple inchoate offenses relating to the same substantive crime. ORS 161.485(4). The result is akin to merger: A defendant may be charged with, and found guilty of, multiple inchoate crimes pertaining to a single substantive offense but cannot have more than one such conviction entered.
In challenging his convictions for attempted aggravated murder, attempted murder, and witness tampering, defendant first focuses on a key term in the attempt statute, "substantial step." We have addressed the meaning of that term once before, in State v. Walters , 311 Or. 80, 804 P.2d 1164 (1991). There, we held that, to constitute a substantial step toward commission of the crime, the "defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." Walters , 311 Or. at 85, 804 P.2d 1164. Defendant points to the first prong of that formulation and argues that it imposes a requirement that defendant's act must make his criminal **74 purpose more likely to be realized. If so, he argues, then his convictions must be reversed because defendant's efforts to solicit a non-existent hitman made his criminal purpose no more likely to be realized. *81 Yet that reasoning, as defendant acknowledges, must grapple with a statute, ORS 161.425, that provides:
"In a prosecution for an attempt, it is no defense that it was impossible to commit the crime which was the object of the attempt where the conduct engaged in by the actor would be a crime if the circumstances were as the actor believed them to be."
Defendant argues that including a requirement of actual advancement in the substantial step analysis, at least in cases of solicitation, is not at odds with the legislature's clear directive that impossibility is not a defense.
We disagree. We begin with an examination of text and context, Gaines , 346 Or. at 171, 206 P.3d 1042, focusing on ORS 161.425. The plain text of ORS 161.425 provides that attempt liability does not rest on the actual likelihood of the crime occurring. If the state were obligated to show that the defendant did something that made a crime more likely to occur in order to prove that a substantial step took place, then, contra ORS 161.425, impossibility would be a defense to the crime of attempt. Where the attempted crime could not possibly have occurred, the state would be unable to show that the defendant had made it more likely to occur.
"[A] party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it," Gaines , 346 Or. at 172, 206 P.3d 1042, and here the legislative history confirms, rather than contradicts, the plain meaning of the text. In the draft of the Model Penal Code, on which Oregon's drafters extensively relied, the attempt provision applies to an individual who, with the appropriate mens rea ,
"purposely does or omits to do anything which, under the circumstances as he believes them to be , is a substantial step in a course of conduct planned to culminate in his commission of the crime."
**75 Model Penal Code, § 5.01(1)(c) at 17 (Tentative Draft No. 10, 1960) (emphasis added). The Model Penal Code contained no separate provision relating to impossibility, but its drafters understood the text of § 5.01(1)(c) to eliminate impossibility as a defense. That is clear from the commentary to the Model Penal Code, which states that "the liability of the actor turns on his purpose, considered in the light of his beliefs, and not on what is actually possible under existing circumstances." Model Penal Code, § 5.01, comment 5, at 38.
Oregon's attempt statute differs from that of the Model Penal Code in that the definition of attempt is separate from the statute addressing impossibility. Yet the similarity in wording is unmistakable- ORS 161.425, like the Model Penal Code, refers to "circumstances * * * as the actor believed them to be." The commentary to the Commission's draft of revisions to the Oregon Criminal Code explains that
"[t]he Model Penal Code Provision on impossibility accomplishes the same policy as that announced in the draft section but employs cumbersome language in the effort; but the basic policy of the Model Penal Code is retained."
Commentary § 56 at 53.[4] We conclude that Oregon attempt law treats impossibility the same way as Model Penal Code did.
The question posed by the first prong of the Walters formulation is not, therefore, whether the act actually advanced the defendant's criminal purpose. What matters is whether the act would have advanced the defendant's criminal purpose were the facts as the defendant believed them to be. Here, then, what matters to the state's theory is not whether the hitman did exist, but whether defendant so believed. And, based on the evidence presented, the finder-of-fact could have concluded that defendant believed in the existence of the hitman. Thus, defendant's first argument fails.
We turn to defendant's second argument, that a bare solicitation to commit a crime cannot constitute an attempt **76 to commit the crime because the legislature intended the crimes of solicitation and attempt to *82 be separate and not overlapping. The case thus presents a seemingly straightforward question: Under what circumstances does a solicitation to commit a crime also constitute an attempt to commit that crime? Defendant does not lay out a precise standard, but suggests that, in the ordinary case, a bare solicitation to commit a crime is insufficient to prove an attempt. As we elaborate below, defendant contends that the legislature addressed two different types of criminal conduct and, for that reason, conduct criminalized because it constituted solicitation was not intended also to constitute the "substantial step" required to constitute attempt. The state, by contrast, argues that there is nothing special about the intersection between attempt and solicitation. In the state's view, the test for attempt is always whether the defendant's acts constituted a substantial step. Thus, the same conduct that constitutes solicitation, depending on the circumstances, may also be the "substantial step" that makes the defendant guilty of attempt as well. For that reason, the state contends, in most cases, including this one, even a bare solicitation will constitute a substantial step required for an attempt.
Once again, this is an issue of statutory construction, and we approach it in our usual manner. We begin with the text that is directly at issue: ORS 161.405(1), the attempt statute. To reiterate, ORS 161.405(1) provides that attempt is committed when the defendant "intentionally engages in conduct which constitutes a substantial step toward commission of the crime." As the state notes, the statute does not substitute some other analysis for the "substantial step" test when the defendant is charged with attempting to commit a crime by solicitating another to engage in criminal conduct. Nor, for that matter, does the attempt statute contain any reference to solicitation at all. But the attempt statute is ambiguous in an important respect. The text does not tell us whether "commission of the crime" must be by the defendant, or whether the state can prove a substantial step by showing that the defendant advanced the commission of a crime that was to be committed by someone else.
**77 Turning from text to context, the state argues that ORS 161.485(2), the inchoate crimes merger statute discussed above, should be decisive here, because it shows that the legislature anticipated overlap between solicitation and attempt. We find that statute unresponsive to the question at hand. Even if we can infer from ORS 161.485(2) that solicitation and attempt sometimes overlap, it would not tell us anything about when or how often. Thus, even if ORS 161.485(2) would allow us to rule out an interpretation of the attempt statute that led to no overlap with solicitation, it cannot help us choose between an interpretation that would lead to occasional overlap between the two crimes and one that would lead to frequent overlap. Defendant does not argue that attempt and solicitation are mutually exclusive, only that a bare solicitation does not constitute an attempt, and that defendant's conduct in this case did not constitute a substantial step within the meaning of ORS 161.405(1). Thus, ORS 161.485(2) does not speak to the interpretive question at issue in this case.
For that reason, the text and context do not appear to cut meaningfully in favor of either party. However, defendant points us to several pertinent pieces of legislative history that bear directly on the question at hand. Because the statutory text at issue in this case was enacted as part of the 1971 revisions, we look principally to the draft commentary provided by the Criminal Law Revision Commission to illuminate their meaning. As we have noted previously, "[w]e generally assume in the absence of other legislative history that the Legislative Assembly accepted the commission's explanations." State v. Woodley , 306 Or. 458, 462, 760 P.2d 884 (1988). Also relevant here is the American Law Institute's Model Penal Code, which served as an important influence on, and source of text for, the Commission. In particular, we look to the tenth installment of the tentative draft, and the commentary within, because that is what the Commission consulted and cited in drafting the inchoate crimes section. We also consider a treatise on criminal law by Professor Rollin M. Perkins, which the commission repeatedly cited when discussing the intersection of attempt and *83 solicitation. Rollin M. Perkins, Criminal Law (1st ed. 1957). **78 At the time that Oregon's attempt statute was drafted, the majority view among states was that solicitation and attempt overlapped rarely, if ever. The drafters of Oregon's statute were well aware of this fact. As the Criminal Law Revision Commission's Commentary explained, "[a] mere solicitation, even if accompanied by such acts as an offer of payment for commission of the crime or the supplying of materials by the solicitor to commit the crime, does not ordinarily constitute an attempt in the majority view." Commentary § 59 at 57. The Model Penal Code commentary observed that a majority of courts had taken one of two approaches to reach the conclusion that solicitation and attempt rarely overlapped. One approach was to hold that for a solicitation to constitute an attempt, "the other overt acts must proceed beyond what would be called preparation if the solicitor himself planned to commit the crime." Model Penal Code, § 5.02, comment 2, at 85-86. The other approach was "the view that no matter what the solicitor does he cannot be guilty of an attempt because it is not his purpose personally to commit the offense." Id . at 86.
However, neither of those views were the law in Oregon prior to the enactment of the new criminal code. In State v. Taylor , 47 Or. 455, 84 P. 82, decided when Oregon had no solicitation statute, this court had treated solicitation as simply another form of attempt. In that case, a defendant had employed two other individuals to burn a neighbor's barn. Id . at 456-57, 84 P. 82. The defendant paid his accomplices $100, twice showed them "how to start a slow burning fire with a pair of overalls," and supplied one accomplice with a horse and the aforementioned pair of overalls. Id . at 457, 84 P. 82. Had the plan come to fruition, the defendant would have been guilty of the crime of arson. But one of his accomplices had alerted the authorities and was participating only as a ruse. Id . at 456, 84 P. 82. The other grew nervous and, upon nearing the barn, fled rather than setting it alight. Id . at 457, 84 P. 82. The defendant was charged with and convicted of an attempt to commit the crime of arson based on the conduct of his accomplice. Id . at 458, 84 P. 82. Reviewing the conviction, this court observed that the case involved "something more than mere intention or preparation." Id . at 459, 84 P. 82. The court noted that the defendant "had thus done all that he was expected to do." Id .
**79 The court also considered whether the fact that the defendant did not intend to personally commit arson would preclude conviction for attempt. The court held that the law of attempt recognized no distinction:
"If he endeavors or attempts to commit it himself, and is interrupted or frustrated, he would clearly be guilty of an indictable attempt, and, if he uses another person to accomplish the same purpose, and the other fails to carry out his design, whether purposely or otherwise, the result is the same."
Id . at 459-60, 84 P. 82.
Reading the Criminal Law Revision Commission's Commentary, it is clear that the drafters intended to move away from Taylor 's treatment of attempt as encompassing solicitation, and instead to treat solicitation as a separate offense. As the commentary explains, Taylor might have been appropriate in its context, because
"Oregon had no general solicitation statute. Nor was it possible to fall back upon the crime of solicitation recognized in the common law, because Oregon had abandoned all common law crimes except those enacted in its statutes. Thus, for justice to reach the defendant in the Taylor case, the general attempt statute was employed."
Commentary § 59 at 57.
But while the commentary recognized that Taylor had filled a gap to reach a sensible outcome in the case at hand, it also cast doubt on the wisdom of Taylor's approach as a matter of public policy. The commentary noted that Taylor , and cases like it, had been criticized by authoritative sources upon which the Commission had relied:
"The position of the Oregon Supreme Court in State v. Taylor , in effect making solicitation the equivalent of a criminal attempt, is cited by the Model Penal Code as being the minority view and is criticized as bad policy. Although Perkins does not cite *84 the Taylor case specifically in his discussion [of attempt and solicitation in his treatise], other cases cited as being in the minority, of which he also is critical, are almost identical on their facts to Taylor ."
Commentary § 59 at 57. Although the commentary does not explicitly express agreement with those positions, the **80 implication is clear, particularly because the commentary's discussion of Taylor ends there. The commentary relies on the Model Penal Code both for its rationale in enacting a separate solicitation statute and for the text of that statute, and Perkins's treatise is cited several times on the relationship between solicitation and attempt. As a result, that discussion is a strong indication that the new criminal code was intended to follow the Model Penal Code, and break with Taylor .
Less obvious from the face of the commentary is whether there are circumstances in which solicitation and attempt were intended to overlap. The closest the commentary comes to providing an answer to that question is a statement that
"[s]olicitation may in a very limited number of crimes also constitute an attempt to commit the crime. Examples are solicitation to sodomy and solicitation to bribery. See Perkins at 584-86."
Commentary § 59 at 57. On its face, that statement might read as something of a non sequitur , although it is further evidence that the drafters understood that overlap between solicitation and attempt would be rare. Moreover, the two examples offered do evince an underlying rule, which can be discerned by reference to the cited treatise.
The cited work, Professor Rollin Perkins' treatise on criminal law, took the position that,
"The solicitation of another to commit a crime is an attempt to commit that crime if, but only if, it takes the form of urging the other to join with the solicitor in perpetrating that offense,-not at some future time or distance place, but here and now, and the crime is such that it cannot be committed by one without the cooperation or submission of another, such as bribery or buggery."
Perkins, Criminal Law at 586 (footnotes omitted).
For Perkins, this rule arose from the intersection of two basic principles of the law of attempt. First, for Perkins, an attempt required "dangerous proximity to success," or at least apparent dangerous proximity. Id . at 572. Second, **81 attempt required a "specific intent to commit that offense" which, for Perkins, included an intent to commit the crime personally. Id . at 585-86. Perkins believed that most solicitations would not satisfy both of those two requirements. With respect to the crimes of bribery and sodomy, however, Perkins believed that generally the solicitation would contemplate the solicitor's personal participation in the offense and that the solicitor would anticipate "prompt action." Id . at 585.[5]
Oregon's attempt statute departs from Perkins' approach in at least one respect. Unlike Perkins, the Criminal Law Review Commission clearly did not believe that attempt required dangerous proximity to the crime; its adoption of the Model Penal Code's substantial step standard makes that unambiguous. More relevant here is the second basis for Perkins' statement-that a defendant can only be convicted of attempt based on crimes that the defendant intended to take part in personally. The citations to Perkins and the reference to sodomy and bribery indicate that the Commission understood its draft to be consistent with Perkins' understanding that attempt did not extend to crimes that the defendant did not intend to take part in personally.
That approach accorded with the Model Penal Code. This is made most clear in the Model Penal Code commentary's explanation of the distinction between attempt and solicitation under the code:
"And while attempts and solicitations have much in common and are closely related in their historical development, this section provides for separate definition of criminal solicitation on the ground that each of the two inchoate offenses presents *85 problems not pertinent to the other. Even so, it is still possible for an act which is a criminal solicitation to also constitute an attempt-as, for example, where an actor's solicitation of another to engage in sodomy is both an invitation to another to commit a crime and an act done for the purpose of enabling the actor to commit a crime ."
**82 Model Penal Code § 5.02, comment 2, at 86 (footnotes omitted; emphasis added). That explanation of the overlap between solicitation and attempt drew precisely the same distinction that Perkins did.
That understanding also corresponds with how the relationship between solicitation and attempt was explained to the subcommittee responsible for the inchoate crimes section by Professor George Platt, who took the lead on presenting the inchoate crimes section both to the subcommittee and to the commission as a whole. Minutes, Criminal Law Revision Commission, Dec. 13, 1969, 33-45; Minutes; Criminal Law Revision Commission, Subcommittee #3, Apr. 15, 1969, 8. According to the minutes, and referring to Oregon's current treatment of solicitation as subsumed under attempt,
"Professor Platt felt this practice was a bad mixing of concepts as the crime of solicitation would not necessarily constitute the crime of attempt as here. Asking someone to set fire to a barn would be solicitation but it would not have risen, as yet, to the crime of attempt. If the person solicited agrees to do this, it becomes the crime of conspiracy. If the person solicited gets to the point of lighting the match before being stopped, the solicitor is guilty on grounds of complicity, of aiding and abetting in the setting for the fire."
Minutes, Criminal Law Revision Commission, Subcommittee #3, Apr. 15, 1969, 8. Platt further explained that "[h]e did not feel that under the now adopted definition [of attempt] that in the Taylor case there would have been a substantial step." Id . at 10.
This is a telling comment, because only on "the view that no matter what the solicitor does he cannot be guilty of an attempt because it is not his purpose personally to commit the offense," Model Penal Code, § 5.02, comment 2, at 86, would the facts of Taylor have been anything less than a substantial step. The defendant in Taylor not only solicited the commission of the crime but went to great lengths to encourage and to help his agents to commit the crime, including providing money, all necessary materials, and even twice showing them how to start the fire. Even under the slightly less restrictive view of the overlap **83 between solicitation and attempt, where overlap would occur where "the other overt acts must proceed beyond what would be called preparation if the solicitor himself planned to commit the crime," Model Penal Code, § 5.02, comment 2, at 85-86, it is hard to see how the facts of Taylor would not constitute an attempt. Thus, Professor Platt, who was responsible for explaining the inchoate crimes section to both the subcommittee and the commission as a whole, clearly understood the draft to incorporate Perkins' rule, requiring an intent to commit the offense personally, or something very like it.
As we noted above, the text is open to the reading that "commission of the crime" refers to a crime that is to be personally committed by the defendant. The most pertinent legislative history strongly indicates that this is the reading that the drafters had in mind, and the one we presume that the legislature intended. There are several other portions of the commentary and statutory context that support this interpretation, and none that undermine it.
The first is found in the Commission's discussion of the mens rea for attempt. The Commission's elucidation of the mens rea requirement for attempt consisted mostly of a lengthy citation to a comment on a draft of a proposed California statute. That quoted explanation included the following:
"The intent requirement [for attempt] should be satisfied where the defendant intends to engage in the conduct which will constitute the crime . * * * The draft deals with this problem by requiring an intent to engage in conduct which constitutes the crime rather than a specific intent to commit the crime."
Commentary § 54 at 51 (emphasis added).
That citation makes clear that the crime of attempt requires the substantial step to be *86 toward a crime that the defendant intends to take part in personally. When the defendant anticipates that "the conduct which will constitute the crime" will be performed entirely be someone else, then it can hardly be asserted that the defendant "intends to engage" in that conduct. And, in this context, what is true **84 of the mental state must also be true of the underlying conduct. The defendant's substantial step must be toward the crime that he intends personally to commit, not a crime that will be committed by someone else.
Before discussing some of the additional support for the rule we adopt, we must lay the groundwork by making a brief digression into the law of vicarious criminal liability. Under ORS 161.155, when one individual solicits or assists another in committing a crime, the first individual is made liable for any crime the other person commits.[6] But liability for the crimes of another is quite different from personally engaging in the conduct that constitutes the crime, a distinction that this court long has drawn. In State v. Blake , 348 Or. 95, 101, 228 P.3d 560 (2010), we observed that "an accomplice theory of liability is not itself an independent offense. Accomplice liability makes a person who aids or abets a crime liable for that crime even though the accomplice may not have committed any of the acts that the crime entails." Blake , 348 at 101, 228 P.3d 560. We reaffirmed that distinction in State v. Phillips , 354 Or. 598, 605-06, 317 P.3d 236 (2013). Under Oregon law, liability under ORS 161.155 is a form of liability for "conduct of another person constituting a crime," not a separate way of committing the crime. For that reason, an individual who assists in or solicits the criminal conduct that will be committed wholly by someone else does not, and does not intend to, personally engage, in the words of the commentary, in "the conduct which will constitute the crime," even though the person will be held liable for that crime.
**85 That distinction, between direct and vicarious liability, matters here, because it maps on to the distinction that Perkins drew. Under Perkins' approach, a person does not commit the crime of attempt if the person's acts are in support of a substantive crime which the person does not intend to commit personally and for which the individual will therefore be only vicariously liable. The drafters of Oregon's attempt statute had a clear opportunity-and an available framework-to expand the definition of attempt to encompass some acts in support of the commission of a crime by another person, as the Model Penal Code included a provision that did just that. But Oregon did not enact it or any analogous provision.
Model Penal Code, section 5.01(3) provided,
"A person who engages in conduct designed to aid another to commit a crime which would establish his complicity under Section 2.06 [the section of the Model Penal Code defining aiding and abetting liability] if the crime were committed by such other person, is guilty of an attempt to commit the crime, although the crime is not committed or attempted by such other person."
And, as the Model Penal Code commentary explained,
"one of the bases for liability set forth in Section 2.06 [the section of the Model Penal Code defining aiding and abetting liability] * * * is that the actor 'attempted to aid' another person to commit a crime. Thus, since the general principles of [the inchoate crimes section] are applicable in giving content to the reference to 'attempt' in Section 2.06, we return to Subsections (1) and (2) of this Section [defining attempt] for standards in passing on the *87 sufficiency of conduct short of the last proximate act."
Model Penal Code, § 5.01, comment 18, at 69. As a result, an act intended to facilitate someone else in committing a crime would become an attempt by virtue of Model Penal Code section 5.01(3), provided that it constituted a substantial step. This makes clear, however, that the other attempt provisions of the Model Penal Code, sections 5.01(1) and (2), would not have that result on their own. If they had, Model Penal Code section 5.01(3) would have been redundant. And, as the Model Penal Code commentary acknowledged, that **86 extension of attempt liability was something of a departure from prior law, noting that "there has been little litigation concerning liability for conduct designed to aid another to commit a crime where the crime is not committed or attempted by the other person." Model Penal Code § 5.01, comment 18, at 68.
But although Oregon's attempt law was derived from section 5.01(1) of the Model Penal Code, Oregon never adopted Model Penal Code section 5.01(3) or any analogous provision. That omission is significant in this case-and a problem for the state's argument. If we accepted the state's view that attempt could be committed even with respect to crimes that the defendant had no plan to participate in personally then the conduct reached by section 5.01(3) would fall under ORS 161.405. And because neither section 5.01(3) nor anything like it was included in the draft or adopted, we doubt that is the result the legislature intended.
If section 5.01(3) had been incorporated into Oregon's Criminal Code, the state would have an argument that defendant's actions would fall under it. The evidence viewed in the light most favorable to the state shows that defendant, by the acts of solicitation and attempting to furnish the hitman with information on the victims and a map of one victim's house, attempted to aid another's crime. If Oregon had adopted statutory text analogous to Model Penal Code section 5.01(3), then that would be a sound theory of attempt liability, although we would still have to consider whether defendant's actions were sufficient to constitute a substantial step. But the legislature did not enact that text, and we decline to ignore that omission and expand ORS 161.405 to encompass efforts toward crimes committed by someone else.
Another relevant piece of legislative history comes from the drafters' discussion of what constitutes a substantial step. The commentary quoted with approval seven examples of a substantial step given by the Model Penal Code and specifically included them in the commentary to guide judicial interpretation of the term "substantial step." The final example, which both parties recognize as important to our analysis, is "soliciting an innocent agent to engage in **87 conduct constituting an element of the crime." Commentary § 54 at 51. The reference to an "innocent agent" refers to a situation "where defendant causes a child or mentally incompetent or one without a criminal state of mind (most likely because the defendant has misled or withheld facts from him) * * * to engage in conduct." Wayne R. LaFave, 2 Substantive Criminal Law § 13.1(a), 443-44 (3rd ed. 2018).[7]
Defendant argues that the commentary's specific inclusion of solicitation of innocent agents paired with its omission of guilty agents is significant, and indicates that soliciting a guilty agent would not ordinarily constitute a substantial step. On the other hand, the state suggests that if soliciting an innocent agent is sufficient to constitute a substantial step, then soliciting a guilty agent must be as well. But while figuring out why a line between innocent and guilty agents would be drawn presents a puzzle, accepting the state's analysis creates its own puzzle: Why would the commentary include the adjective "innocent" if solicitation of any agent would constitute a substantial step? After all, if the commentary had stated, for example, that "soliciting a hungry agent" would be a *88 substantial step, we would assume that the drafters had some reason to think that hunger would factor into the analysis, even if that reason were not immediately apparent.
As it happens, the puzzle presented by defendant's reading is not at all difficult to solve. There is an ancient distinction between guilty and innocent agents that bears directly on the question at hand. As Professor LaFave explains, under common law,
"[o]ne who uses an intermediary to commit a crime is not ordinarily a principal in the first degree. It is otherwise, however, when the crime is accomplished by the use of an innocent or irresponsible agent. * * * In such a case, the intermediary is regarded as a mere instrument and the originating actor is the principal in the first degree."
**88 LaFave § 13.1(a) at 443-44 (footnotes omitted). In other words, " 'a principal of the first degree is one who does the act, either himself directly, or by means of an innocent agent.' " Phillips , 354 Or. at 611, 317 P.3d 236 (2013) (quoting Joel Prentiss Bishop, 1 Commentaries on the Criminal Law § 456 (2d ed. 1858) ).
Although the common law approach to accomplice liability has been abolished in Oregon, the distinction between innocent and knowing agents stands. When someone solicits a knowing, or guilty, agent to commit a crime, the solicitor is vicariously liable for the conduct of that other person under ORS 161.155 :
"A person is criminally liable for the conduct of another person constituting a crime if:
"* * * * *
"(2) With the intent to promote or facilitate the commission of the crime the person:
"(a) Solicits or commands such other person to commit the crime."
Yet neither that statute nor any other provision concerning liability for the conduct of another makes a person liable for the crimes of their innocent agent. After all, the innocent agent, lacking mens rea , does not himself commit a crime at all, so in such cases there is no "conduct of another person constituting a crime," ORS 161.155, for which to hold the solicitor liable. Thus, the appropriate theory of liability for someone who commits a crime by use of an innocent agent would be one of direct liability, with the agent treated as a "mere instrument."
That distinction meshes perfectly with the understanding of attempt liability outlined above. Someone who solicits a guilty agent to commit a crime is vicariously liable for the agent's crime, should it be committed or attempted, but does not engage in the conduct constituting the crime. As a result, he does not engage in acts constituting a "substantial step toward commission of the crime" within the meaning of ORS 161.405. By contrast, someone who induces **89 an innocent agent to commit a crime is directly liable for the crime and the agent is treated as a "mere instrument." Thus, in those cases, the solicitor does personally engage in the conduct constituting the crime and can be guilty of attempt by virtue of the solicitation.[8]
Thus, the rule is that to be guilty of attempt, the defendant must personally engage in conduct that constitutes a substantial step, and that substantial step must be toward a crime that the defendant intends to participate in himself. That does not mean that a defendant can never be guilty of both solicitation and attempt, even based on a "mere" or "bare" solicitation. As the draft commentary, the Model Penal Code, and Perkins all note, there are at least some crimes where the defendant is likely to both *89 solicit criminal conduct and intend to personally engage in the same conduct. Nor do we intend to suggest that sodomy and bribery define the scope of those crimes. The modern crime of sodomy is not the prohibition on consensual sexual activity between adults that those authors referenced, and thus Perkins' reasoning may no longer apply. See ORS 163.385 to 405 ; Edward N. Fadeley, Sex Crime in the New Code , 51 Or. L. Rev. 515 (1972). And, in the current code, there are likely other crimes, and certainly other factual circumstances, where such an overlap may occur, particularly because Oregon's substantial step test draws the line between preparation and attempt further back than Perkins' dangerous proximity test. And, as we noted in Phillips , 354 Or. at 603-04, 317 P.3d 236, at least with respect to some crimes, a defendant's acts might be so intertwined with those of a third **90 party that the defendant is directly liable even when the third party commits the criminal act.[9]
In this case, the state's evidence shows that defendant intended all the substantive crimes to be committed by the hitman and that defendant took steps toward realizing that goal. But there is no evidence that defendant intended personally to engage in conduct that would constitute any elements of the substantive crimes, much less any evidence that he took a substantial step toward doing so. Because no substantial step occurred, Oregon's law of attempt places that conduct on the preparatory side of the line. For that reason, the trial court erred in denying defendant's motion for a judgment of acquittal on the attempted aggravated murder, attempted murder, and tampering with a witness counts.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

We set out the text of the statutes in full and discuss them at length below.

Defendant's motion was directed at the "attempt" charges and at the witness tampering charges, the latter because the crime of witness tampering itself encompasses an "attempt" to commit the crime, and was charged under that theory in his case. ORS 162.285 provides:
"(1) A person commits the crime of tampering with a witness if:
"(a) The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony; or
"(b) The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned."
(Emphasis added).

The trial court merged several of the inchoate offenses convicted defendant only of three counts of attempted aggravated murder, one for each victim, and two counts of tampering with a witness.

"We generally assume in the absence of other legislative history that the Legislative Assembly accepted the commission's explanations." State v. Woodley , 306 Or. 458, 462, 760 P.2d 884 (1988).

Perkins, like Oregon's criminal code prior to the 1971 revisions, understood the crime of sodomy or buggery to apply to consensual sexual encounters.

ORS 161.155 provides:
"A person is criminally liable for the conduct of another person constituting a crime if:
"(1) The person is made criminally liable by the statute defining the crime; or
"(2) With the intent to promote or facilitate the commission of the crime the person:
"(a) Solicits or commands such other person to commit the crime; or
"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime;
"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make."

That conduct would not constitute "solicitation," in the sense of the crime of solicitation, because the innocent agent "is himself not being incited to commit a crime." Model Penal Code § 5.01, comment 15, at 62. In this context, "soliciting" is evidently being used in an informal sense, and, for clarity, we retain that usage when discussing the text at hand, although the term "inciting" would be technically be more accurate.

This conclusion parallels that reached by Perkins, although he reasons slightly differently:
"One who desires to accomplish a criminal purpose by the hand of another may plan to make use of either a guilty agent or an innocent agent. * * * In the first type of case the agent is asked to commit a crime because he will be guilty of the crime if he complies. In the second type of case the agent is not asked to commit a crime because doing what is asked will not be a crime by the agent, but only by the asker. And * * * the result is as follows: The request in the first type of case is a criminal solicitation and is not a criminal attempt. The request in the second type of case is not a criminal solicitation but is a criminal attempt-because it is the last guilty act contemplated and is expected to accomplish the result."
Perkins, Criminal Law at 587 (footnote omitted).

The state suggests that a rule limiting the overlap between solicitation and attempt would result in the absurd consequence of trial courts being required to grant a motion for a judgment of acquittal with respect to attempt where there is evidence showing solicitation. It is hard to see how that follows. Where the evidence is sufficient to allow a rational finder of fact to convict a defendant of attempt and is also sufficient to allow a conviction for solicitation, then both questions would properly go to the finder of fact.