Argued and submitted April 25, 2019, affirmed July 22, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SCOTT WILLIAM KYGER,
*Defendant-Appellant.*

Clackamas County Circuit Court
17CR08793; A165404

471 P3d 764

For attacking two men with a razor blade, the state charged defendant with, among other things, two counts of attempted aggravated murder. At defendant's bench trial, the state's theory on the attempted aggravated murder counts was that, in each instance, defendant had taken a substantial step toward killing the victim under circumstances in which (had defendant succeeded) there would have been more than one homicide victim. After the court found defendant guilty, he moved in arrest of judgment on the ground that the state's theory was not legally viable. He argued that, in the context of aggravated murder, the number of victims involved in a criminal episode is a circumstance element that cannot, as a matter of law, be attempted. The court denied the motion. Defendant appeals, assigning error to the court's denial of his motion in arrest of judgment and renewing his arguments on appeal. *Held*: The trial court did not err. Under ORS 161.405, proof of an attempt offense simply requires proof that a person intentionally engaged in conduct that constituted a substantial step toward the completed offense, such that proof that a person intentionally engaged in conduct constituting a substantial step toward the killing of more than one person in the same criminal episode establishes attempted aggravated murder.

Affirmed.

Michael C. Wetzel, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the opening brief and a reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Scott W. Kyger filed the supplemental brief and a reply brief *pro se*.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

This case presents the question whether an attempted aggravated murder charge based on the theory that the defendant had the objective of killing two or more persons in the same criminal episode is legally tenable. Defendant was a backseat passenger in a car when he punched another passenger and then drew a razor blade and attacked two other men in the car. The state charged him with two counts of attempted aggravated murder for the razor-blade attacks, as well as several other offenses for his conduct during the episode. Defendant waived his right to a jury trial and the case was tried to the court. The state's theory on the attempted aggravated murder counts was that, in each instance, defendant had taken a substantial step toward killing the victim under circumstances in which (had defendant succeeded) there would have been more than one homicide victim. After the court found defendant guilty, he moved in arrest of judgment on the ground that the state's theory was not legally viable. He argued that, in the context of aggravated murder, the number of victims involved in a criminal episode is a circumstance element that cannot, as a matter of law, be attempted. The court denied the motion. We conclude that, under *State v. Quintero*, 110 Or App 247, 823 P2d 981 (1991), *modified on other grounds on recons*, 114 Or App 142, 834 P2d 496, *rev den*, 314 Or 392 (1992), the court correctly denied defendant's motion in arrest of judgment. Defendant raises two *pro se* supplemental assignments of error that we also reject. We therefore affirm.

The question raised by defendant's motion in arrest of judgment is one of law. We therefore review for legal error. *State v. Stout*, 281 Or App 263, 266, 382 P3d 591 (2016), *aff'd*, 362 Or 758, 415 P3d 567 (2018).

The victims on the counts of attempted aggravated murder, Z and G, along with a third man, B, were "work colleagues" (as the prosecutor described them below) in a scheme buying and selling mobile phones. G was the boss. B and Z worked for G. Their job was to recruit people willing to take a hit to their credit score in exchange for compensation, typically homeless people, to obtain mobile phones from mobile phone stores. They would instruct the recruits on what phones to obtain, and how to obtain them, and

front any funds needed for the acquisitions. A recruit who obtained the right phones would be paid $100. A recruit who obtained no phones or the wrong phones would be paid nothing. G would then resell the phones at higher prices.

Defendant and his girlfriend were among the recruits. G, Z, and B picked them up in Clackamas. After failed attempts to purchase phones at Portland-area stores (stores that were starting to catch on to the scheme), the group drove to Salem so that defendant and his girlfriend could attempt to purchase phones from Salem stores. They obtained phones at one store, but they were the wrong phones. Although the store accepted the return of those phones, it grew suspicious and would not give defendant any more phones. Although defendant went to several other stores, none of those stores would sell phones to him.

The group returned to Portland. During the drive, G told defendant and his girlfriend that they would not be paid because they did not get any phones. Angered, defendant punched B in the head two or more times, sliced G's face and neck so it looked like "hamburger," and slit Z's throat. He then jumped out of the still-moving car and ran from the scene. Defendant was apprehended about two weeks later.

For his razor-blade attacks on G and Z, the state charged defendant with two counts of attempted aggravated murder. As to those counts, the indictment alleged:

"The defendant, on or about April 25, 2016, in Clackamas County, Oregon, did unlawfully and intentionally attempt to cause the death of [Z], another human being, defendant having unlawfully and intentionally attempted to cause the death of [G], an additional human being, in the course of the same criminal episode.

"* * * * *

"The defendant, on or about April 25, 2016, in Clackamas County, Oregon, did unlawfully and intentionally attempt to cause the death of [G], another human being, defendant having unlawfully and intentionally attempted to cause the death of [Z], an additional human being, in the course of the same criminal episode."

Defendant waived his right to a jury, and the case was tried to the court. The court found defendant guilty of those two charges, and a number of others.

Defendant then filed a motion in arrest of judgment on the attempted aggravated murder counts. He argued that, for purposes of aggravated murder, the presence of another victim is a circumstance element and that, further, a person cannot attempt to commit a circumstance. Thus, defendant asserted, he was guilty only of attempted murder, and the court should reduce the charges—and convictions— to attempted murder. The state responded that *Quintero* rejected a comparable argument, thereby foreclosing defendant's argument. The court denied the motion, relying on *Quintero*. Defendant appealed.

On appeal, defendant assigns error to the trial court's denial of his motion in arrest of judgment. He argues, much as he did below, that a person cannot attempt a circumstance element of a crime. Thus, defendant reasons, a person who takes a substantial step toward killing two or more people in a single criminal episode, but succeeds at killing none of them, has committed only attempted murder with respect to each potential victim. Defendant urges us to conclude either that *Quintero* does not control or, alternatively, that we should overrule it, in view of the Supreme Court's subsequent decision in *State v. Turnidge (S059155)*, 359 Or 364, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017), and our subsequent decision in *State v. Snyder*, 288 Or App 58, 405 P3d 175 (2017), which, in defendant's view, undercut *Quintero*'s conclusion. The state responds that *Quintero* is dispositive and that neither *Turnidge* nor *Snyder* demonstrate that it should be overruled. For the reasons that follow, we agree with the state.

Under ORS 163.095(1)(d) (2015), *amended by* Oregon Laws 2019, chapter 635, section 1, a person committed the offense of aggravated murder when the person committed the offense of murder and "[t]here was more than one murder victim in the same criminal episode as defined in ORS 131.505."[1] Under ORS 161.405, a person commits the inchoate crime of "attempt to commit a crime when the person

---

[1] The 2019 legislature made substantial amendments to the homicide statutes, including to ORS 163.095. Or Laws 2019, ch 635, § 1. All references to ORS 163.095 in this opinion are to ORS 163.095 (2015), the version in effect at the time defendant committed his crimes.

intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405. The core question in this case is whether a person who takes a substantial step toward murdering two or more people in the same criminal episode, but does not end up killing anyone at all, commits the crime of attempted aggravated murder.

Under our en banc decision in *Quintero*, the answer to that question is yes. In that case, two of the defendants were charged with, and convicted of, attempted aggravated murder under the theory that they each had attempted to kill more than one person in the same criminal episode. 110 Or App at 256-57. Although the defendants had attempted to kill more than one person, they did not succeed in killing anyone. *Id.* at 257. Much like defendant here, the defendants argued that the charges should be dismissed, or that acquittal was required, because, in their view, absent a murder victim, "it is a physical, legal and logical impossibility to have the crime of Attempted Aggravated Murder." *Id.* (internal quotation marks omitted). Relying on the definition of the crime of attempt in ORS 161.405, we rejected that argument, explaining that proof of an attempt offense simply required proof that a person intentionally engaged in conduct that constituted a substantial step toward the completed offense, such that proof that a person intentionally engaged in conduct constituting a substantial step toward the killing of more than one person in the same criminal episode establishes attempted aggravated murder:

> "An attempt, by definition, does not require that all elements of the offense be completed. The state presented evidence to show that defendants had intentionally engaged in conduct constituting a substantial step toward the murder of more than one person. That crime is attempted aggravated murder."

*Id.* Thus, as the trial court correctly recognized, *Quintero* foreclosed it from granting defendant's motion in arrest of judgment.

Defendant argues that two cases—the Supreme Court's decision in *Turnidge* and our own decision in *Snyder*—undercut *Quintero*, requiring us to overrule it and hold, to the contrary, that an attempt to kill more than one

person in the same criminal episode does not constitute attempted aggravated murder under ORS 161.405 and ORS 163.095(1)(d) unless there is at least one murder victim. We disagree that *Turnidge* and *Snyder* require us to overrule *Quintero*.

First, our decision in *Quintero* tracks the text of ORS 161.405, as that text has been interpreted by the Supreme Court. Under the plain terms of ORS 161.405, "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." As the Supreme Court has explained, this means that a person commits the inchoate crime of attempting to commit a particular crime when the person (1) intentionally—that is, with the "conscious objective" of engaging in the particular crime, (2) engages in conduct that constitutes a substantial step toward the particular crime. *State v. Walters*, 311 Or 80, 84-85, 804 P2d 1164, *cert den*, 501 US 1209 (1991). To qualify as "a substantial step toward commission of the crime, the 'defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose.'" *State v. Kimbrough*, 364 Or 66, 73, 431 P3d 76 (2018) (quoting *Walters*, 311 Or at 85). When that definition of attempt is considered in connection with the particular crime of aggravated murder as defined by ORS 163.095(1)(d), those provisions easily capture a person who, with the conscious objective of killing multiple persons in the same criminal episode, takes steps in furtherance of that objective, even if the person ultimately succeeds in killing no one, which is what we ultimately concluded in *Quintero*.

Second, our decision in *Quintero* is consistent with the legislature's purpose in criminalizing the inchoate crime of attempt. *See generally* Or Laws 1971, ch 743, §§ 54-56; Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, §§ 54-56, 51-55 (July 1970). Those provisions were intended to get at the danger presented by people who have conscious criminal objectives and act in furtherance of those objectives, even when those criminal objectives are not achieved:

> "The law of attempt is now recognized as being more properly directed at the dangerousness of the actor—the threat of the actor's personality to society at large.
>
> "*****
>
> "The Model Penal Code comment on situations of this kind is well expressed as follows:
>
> "'In all of these cases (1) criminal purpose has been clearly demonstrated, (2) the actor has gone as far as he could in implementing that purpose, and (3) as a result, the actor's "dangerousness" is plainly manifested.'"

Commentary at § 55 at 52-53. Holding a person responsible for attempted aggravated murder when the person has the criminal purpose of killing more than one person in the same criminal episode, and takes substantial steps toward that criminal objective, is consistent with that legislative intent to target the dangerousness of an actor who has the purpose of killing more than one person—an intent that would be frustrated were we to conclude that a person with the conscious objective of killing more than one person in the same criminal episode could be liable only for attempted murder if the person does not, in the end, kill anyone.

Third, neither *Turnidge* nor *Snyder* addressed the issue presented here and in *Quintero*: whether intentionally engaging in conduct that constitutes a substantial step toward killing two or more people in the same criminal episode amounts to the crime of attempted aggravated murder where, as here, that intentional conduct does not ultimately cause the death of any person. *Turnidge* addressed the completed offense of aggravated murder under ORS 163.095(1)(d) and, in particular, whether proof of the completed offense required proof of the attendant circumstance that the defendant intended to cause the death of more than one victim in the same criminal episode. *Turnidge*, 359 Or at 503-05. After reviewing the text, context, and legislative history of ORS 163.095, the court concluded that proof of the completed offense did not require proof that a defendant intended to kill more than one victim in the same criminal episode. *Id.* The court did not address the inchoate crime of attempt at all. *Id.* For that reason, *Turnidge* does not supply insight into whether a person who engages in conduct with

the conscious purpose of killing more than one person in the same criminal episode, but succeeds in killing no one, commits the crime of attempted aggravated murder.

*Snyder*, on the other hand, did address the inchoate offense of attempt, but with respect to driving under the influence of intoxicants (DUII) and not with respect to aggravated murder. 288 Or App at 60. In *Snyder*, the defendant was charged with DUII. *Id*. He requested that the jury be instructed on attempt, under the theory that the evidence would allow for the jury to find that he "was at most attempting to be sufficiently intoxicated" to commit DUII, but was not yet intoxicated enough to have committed DUII. *Id*. at 61. We rejected that argument, reasoning that, under the case law, "[a] DUII defendant's level of intoxication * * * is a question of status that exists regardless of conduct or purpose." *Id*. at 62. Consequently, "a nonintoxicated driver who has recently consumed alcohol is not attempting, in any legal sense of the word, to commit DUII simply because he *might* become intoxicated while still driving." *Id*. (emphasis in original). That is, "simply driving after having consumed alcohol" is not behavior that is "proscribed by law," regardless of whether the person may have intended to consume enough alcohol to result in legal intoxication. *Id*.

We recognize that some aspects of our analysis in *Snyder* support defendant's view as to how the attempt statute should work with the underlying offense of aggravated murder based on the killing of more than one victim. In defendant's view, the presence of an additional victim for purposes of aggravated murder is analogous to the status of being intoxicated for purposes of DUII, in that both are attendant circumstances that do not require proof of a mental state for proof of the completed crime. He argues that *Snyder* stands for the proposition that a person cannot "attempt" an attendant circumstance of that nature because it is a binary status that either exists or does not. Therefore, in defendant's view, a person who does not succeed in killing at least one person had not attempted, for purposes of the law, to commit the crime of attempted aggravated murder. Although that comparison between this case and *Snyder* is not without some force, it ultimately does not persuade us

that our straightforward reading of the attempt statute in *Quintero* is wrong and should be overruled.

For one, as explained above, that reading is consistent with the text of the attempt statute and with the legislative intentions in defining the inchoate crime of attempt. The court in *Snyder* did not address *Quintero* or purport to be displacing its holding. Further, the analysis in *Snyder* was specific to the "status" of being intoxicated under DUII statutes, and there is no reason to believe that the court was creating a rule to apply more broadly to a context like attempted aggravated murder, or that the *Snyder* court viewed the status of being intoxicated under the DUII statutes as equivalent to the circumstance of a criminal episode involving more than one murder victim that defines the offense of aggravated murder under ORS 163.095(1)(d). *See Snyder*, 288 Or App at 62 (explaining that "simply driving after having consumed alcohol" is "perhaps inadvisable" but "not proscribed by law, and does not constitute an attempt to commit a criminal act"). Finally, *Quintero* is not the only one of our published cases to recognize that a person commits the offense of attempted aggravated murder by intentionally engaging in conduct that constitutes a substantial step toward the killing of more than one person in the same criminal episode, even if that conduct does not result in the death of anyone. *See State v. Goltz*, 169 Or App 619, 10 P3d 955 (2000), *rev den*, 331 Or 583 (2001) (holding that verdicts on two counts of attempted aggravated murder based on the defendant's unsuccessful attempt to kill two people in the same criminal episode did not merge; concluding that there are as many counts of attempted aggravated murder as there are potential victims). Defendant has not persuaded us that *Turnidge* and *Snyder*, neither of which dealt with the issue at hand, call that entire line of authority into question.

In sum, under *Quintero*, the trial court correctly denied defendant's motion in arrest of judgment. In addition to the assignment of error that defendant raises in his brief submitted through counsel, defendant has raised two *pro se* supplemental assignments of error. Having considered them, we reject them without further written discussion.

Affirmed.