Argued and submitted September 23, 2021, resubmitted January 25; decision of Court of Appeals and judgment of circuit court affirmed March 22; petitioner on review's petition for reconsideration filed March 23, considered and under advisement April 12, allowed by opinion April 21 2022
See 369 Or 604, 509 P3d 112 (2022)

STATE OF OREGON,
*Respondent on Review,*

*v.*

SCOTT WILLIAM KYGER,
*Petitioner on Review.*

(CC 17CR08793) (CA A165404) (SC S068337)

506 P3d 376

Defendant was charged with and convicted of two counts of attempted aggravated murder for cutting the necks of two people with a razor blade. Defendant challenged the indictment, arguing that a circumstance element of an offense must exist as a predicate for attempt liability, and that, because neither victim died, the indictment did not properly allege the aggravating circumstance that there was "more than one murder victim in the same criminal episode" under ORS 163.095(1)(d). The trial court rejected that argument. The Court of Appeals affirmed. *Held*: Attempted aggravated murder under ORS 163.095(1)(d) requires intentional conduct constituting a substantial step toward causing the deaths of more than one victim in the same criminal episode. The existence of multiple deaths is an attendant circumstance that must be present for the completed crime of aggravated murder, but it is not required for the inchoate offense of attempted aggravated murder.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Anne Fujita Munsey, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Susan G. Howe, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____
* On appeal from Clackamas County Circuit Court, Michael C. Wetzel, Judge. 305 Or App 548, 471 P3d 764 (2020).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

GARRETT, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**GARRETT, J.**

During a single criminal episode, defendant cut the necks of two people with a razor blade. For that conduct, the state charged him with two counts of attempted aggravated murder under ORS 163.095 (2015)[1] and ORS 161.405 (2015).[2] ORS 163.095(1)(d) provides that one of the circumstances elevating murder to aggravated murder is the existence of "more than one murder victim in the same criminal episode." Defendant was convicted of both counts.

The question before this court is whether the state charged a viable theory of attempted aggravated murder. Defendant contends that the existence of "more than one murder victim" is a circumstance that must exist for a person to be guilty of aggravated murder; that it did not exist here because neither victim died; and that defendant's intentional conduct did not amount to attempted aggravated murder because a person cannot "attempt" to commit a circumstance element of an offense. In defendant's view, the allegations supported, at most, charges for attempted murder. The trial court and the Court of Appeals disagreed with defendant. We affirm.

## I.   BACKGROUND

Defendant and his girlfriend were recruited by three people to participate in a scheme to make money by purchasing and reselling cellular phones. Defendant did not successfully purchase any phones, and he made no money in the scheme. At the conclusion of their efforts, all five people were in a vehicle, with defendant and his girlfriend seated next to each other in the rear seat. Defendant grew angry

---

[1] The legislature amended ORS chapter 163 in 2019. Or Laws 2019, ch 635, § 1. In the amended 2019 statute, the "more than one murder victim" circumstance element was moved from the category of "aggravated murder" to that of "first-degree murder." *Id.* § 3. The text of that element otherwise remained the same. *Id.* Amendments to other sections of chapter 163 also do not affect our analysis. Because the underlying events in this case occurred in 2016, all citations in this opinion are to the 2015 version of the statutes in ORS chapter 163, unless stated otherwise.

[2] The legislature also amended ORS 161.405 in 2019. Or Laws 2019, ch 635, § 15a. The amendments added "aggravated murder" to the Class A felony category of attempt. Those amendments did not change the definition of attempt. Because the underlying events in this case occurred in 2016, all citations in this opinion to ORS 161.405 are to the 2015 version, unless stated otherwise.

when he was informed that he would not be paid. When the vehicle came to a stop, he reached across the seat, grabbed the head of the victim seated behind the driver, and cut the victim's neck with a razor blade. He did the same thing to the driver, and he struck the third victim with his fists. The two victims of the razor-blade attack were injured but survived. Defendant later told police that he "wanted to kill" all three victims.

The state charged defendant with, among other counts, two counts of attempted aggravated murder, as follows:

"The defendant, on or about April 25, 2016, in Clackamas County, Oregon, did unlawfully and intentionally attempt to cause the death of [Z], another human being, defendant having unlawfully and intentionally attempted to cause the death of [G], an additional human being, in the course of the same criminal episode.

"The defendant, on or about April 25, 2016, in Clackamas County, Oregon, did unlawfully and intentionally attempt to cause the death of [G], another human being, defendant having unlawfully and intentionally attempted to cause the death of [Z], an additional human being, in the course of the same criminal episode."

After a bench trial, defendant was convicted of both attempted aggravated murder counts and other crimes.

At sentencing, defendant renewed a pretrial demurrer by making a motion in arrest of judgment. Defendant argued that the aggravating factor set out in ORS 163.095 (1)(d) is a circumstance element of the offense, not a conduct element, and that a circumstance either exists or not—it cannot be "attempted." Thus, defendant insisted, the indictment failed to allege a valid theory of attempted aggravated murder. The trial court disagreed and denied the motion.

On appeal, defendant renewed his argument. The Court of Appeals affirmed, relying on its own precedent in *State v. Quintero*, 110 Or App 247, 257, 823 P2d 981 (1991), *modified on other grounds on recons*, 114 Or App 142, 834 P2d 496, *rev den*, 314 Or 392 (1992) ("The state presented evidence to show that defendants had intentionally engaged

in conduct constituting a substantial step toward the murder of more than one person. That crime is attempted aggravated murder."). *State v. Kyger*, 305 Or App 548, 471 P3d 764 (2020).

We allowed review to consider defendant's argument that, under ORS 163.095(1)(d), the death of "more than one murder victim in the same criminal episode" is a circumstance that must exist for the state to properly charge the inchoate crime of attempted aggravated murder.[3]

## II.   ANALYSIS

The parties' arguments implicate two statutes: ORS 163.095, which defines the crime of aggravated murder, and ORS 161.405, which defines the crime of attempt. We resolve the interpretative dispute by discerning the intent of the legislature as demonstrated by the text, context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

### A.   *The Aggravated Murder Statute*

Aggravated murder is a heightened form of criminal homicide. ORS 163.095; ORS 163.115(1)(a). Criminal homicide is committed when a person intentionally, knowingly, recklessly, or with criminal negligence causes the death of another human being without justification or excuse. ORS 163.005. Criminal homicide, if committed intentionally, is murder. ORS 163.115(1)(a). Murder becomes aggravated murder under specified circumstances. ORS 163.095. This case concerns one of those circumstances, the murder of more than one victim, as set out in ORS 163.095(1)(d). Because other circumstances set out in ORS 163.095 provide relevant context, we include the full text of the statute here:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

---

[3] Although defendant raised other issues in his petition for review, he failed to present any briefing or argument on those issues. Accordingly, we do not reach them.

"(1)(a)   The defendant committed the murder pursuant to an agreement that the defendant receive money or other thing of value for committing the murder.

"(b)   The defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder.

"(c)   The defendant committed murder after having been convicted previously in any jurisdiction of any homicide, the elements of which constitute the crime of murder as defined in ORS 163.115 or manslaughter in the first degree as defined in ORS 163.118.

"(d)   There was more than one murder victim in the same criminal episode as defined in ORS 131.505.

"(e)   The homicide occurred in the course of or as a result of intentional maiming or torture of the victim.

"(f)   The victim of the intentional homicide was a person under the age of 14 years.

"(2)(a)   The victim was one of the following and the murder was related to the performance of the victim's official duties in the justice system:

"(A)   A police officer as defined in ORS 181A.355;

"(B)   A correctional, parole and probation officer or other person charged with the duty of custody, control or supervision of convicted persons;

"(C)   A member of the Oregon State Police;

"(D)   A judicial officer as defined in ORS 1.210;

"(E)   A juror or witness in a criminal proceeding;

"(F)   An employee or officer of a court of justice;

"(G)   A member of the State Board of Parole and Post-Prison Supervision; or

"(H)   A regulatory specialist.

"(b)   The defendant was confined in a state, county or municipal penal or correctional facility or was otherwise in custody when the murder occurred.

"(c)   The defendant committed murder by means of an explosive as defined in ORS 164.055.

"(d)  Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b).

"(e)  The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime.

"(f)  The murder was committed after the defendant had escaped from a state, county or municipal penal or correctional facility and before the defendant had been returned to the custody of the facility."

ORS 163.095.

The legislature enacted the aggravated murder statute as part of a sentencing bill in 1977. Or Laws 1977, ch 370, § 1. The purpose of that bill was to enhance penalties for aggravated murder and impose harsher sentences for dangerous offenders. Minutes, House Committee on Judiciary, HB 2011, Mar 23, 1977. The 1977 bill provided for different minimum sentences for "the most heinous" crimes, which carried a sentence of life without the possibility of parole, and what the legislature considered less heinous crimes, which carried a mandatory minimum of 20 years. Or Laws 1977, ch 370, § 2; Minutes, House Committee on Judiciary, HB 2011, Apr 22, 1977. In 1981, the legislature amended the statute to move the "multiple victims" provision at issue in this case to the "more heinous" category of aggravated murder. Or Laws 1981, ch 873, § 1. Thus, we understand from the statute's text, context, and legislative history that the legislature viewed murder as an especially serious offense in cases with multiple victims.

Aggravated murder involving the circumstance set out in ORS 163.095(1)(d) requires that the defendant (1) intentionally; (2) caused the death of another human being; (3) when there was more than one murder victim in the same criminal episode.[4] If the victims in this case had died and the state had charged defendant with aggravated murder,

_____

[4] In ORS 163.095(1)(d), "criminal episode" refers to "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." ORS 131.505(4). There is no dispute in this case that the charged conduct occurred within a single criminal episode.

the state would not have been required to show that defendant acted with the intent to kill multiple victims. In *State v. Turnidge (S059155)*, 359 Or 364, 502, 504, 374 P3d 853 (2016), we held that the existence of "more than one murder victim" in ORS 163.095(1)(d) is an attendant circumstance rather than an aspect of the prohibited conduct, and that it does not require proof of a mental state. Thus, so long as a defendant acts with the intent to cause the death of at least one person, the state does not have to prove whether he or she specifically intended to kill more than one person. *Id.* at 504. That conclusion in *Turnidge* is an important feature of defendant's argument here, as explained later in this opinion.

B.   *The Attempt Statute*

The crime of "attempt" is set out in ORS 161.405(1):

> "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

The attempt statute was enacted as part of the Oregon Criminal Code revision in 1971. Or Laws 1971, ch 743, § 54. As we have explained, attempt is an "inchoate offense," along with solicitation and conspiracy, because it "may result in a conviction even when no substantive crime has been completed." *State v. Kimbrough*, 364 Or 66, 73, 431 P3d 76 (2018).

This court has construed the attempt statute on two occasions. In *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991), we held that the statute codifies the Model Penal Code's "substantial step" test, which draws a line between conduct that is "mere preparation" for criminal activity (and is insufficient to create liability), and conduct that goes further:

> "ORS 161.405 codifies the Model Penal Code's 'substantial step' test for distinguishing acts of preparation from an attempt. 'In § 5.01(2), the Model Penal Code states that to be a substantial step the act must be "strongly corroborative of the actor's criminal purpose[,]"' *i.e.*, defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose."

*Id.* at 85 (internal citations and footnotes omitted). In *Walters*, we upheld the defendant's convictions for attempted first-degree kidnapping, attempted first-degree rape, and attempted first-degree sodomy, reasoning that the evidence was sufficient to permit a finding that he took a substantial step toward the commission of each crime. *Id.* at 86 ("[The] defendant's persistent efforts to entice the intended victim into his truck, his following the girl, and his statements to the police officer and to the girl's mother strongly corroborate his criminal purpose to kidnap, rape, and sodomize the 13-year-old girl.").

Thus, *Walters* held that, to be a substantial step, the defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose. *Id.* at 85. Our second case construing the attempt statute, *Kimbrough*, addressed the first prong of that requirement. In that case, the defendant was convicted of (among other things) attempted aggravated murder for soliciting a hitman, through his cellmate, to kill several people. *Kimbrough*, 364 Or at 68. In fact, there was no hitman, and the defendant's cellmate was cooperating with law enforcement. *Id.* at 70. On appeal, the defendant argued that he had not taken a substantial step because, given the nonexistence of the hitman, the conduct failed to actually "advance the criminal purpose charged." *Id.* at 73-74. This court disagreed, based on the statute that specifically addresses the concept of impossibility as a defense to attempt crimes:

> "In a prosecution for an attempt, it is no defense that it was impossible to commit the crime which was the object of the attempt where the conduct engaged in by the actor would be a crime if the circumstances were as the actor believed them to be."

ORS 161.425. We explained that that statute, like the attempt statute, was drawn from the Model Penal Code, the commentary to which reasoned that "'the liability of the actor turns on his purpose, considered in the light of his beliefs, and not on what is actually possible under existing circumstances.'" *Kimbrough*, 364 Or at 75 (quoting Model Penal Code, § 5.01 (Tentative Draft No 10, 1960)). Despite some differences

between the Model Penal Code and the statutes that the 1971 legislature enacted, we concluded that the legislature retained the "basic policy" and that "Oregon attempt law treats impossibility the same way as [the] Model Penal Code did." *Id.* In light of that, the defendant's focus on whether the hitman actually existed was misplaced:

> "The question posed by the first prong of the *Walters* formulation is not, therefore, whether the act *actually* advanced the defendant's criminal purpose. What matters is whether the act would have advanced the defendant's criminal purpose were the facts as the defendant believed them to be. Here, then, what matters to the state's theory is not whether the hitman *did* exist, but whether defendant so believed."

*Id.* at 75 (emphases in original).

C.   *The Parties' Arguments*

The state takes the position that defendant is guilty of two counts of attempted aggravated murder under a straightforward application of the statutory definitions. In the state's view, that conclusion follows from the fact that defendant "intentionally engage[d] in conduct," the cutting of the victims' necks, which constituted a "substantial step toward the commission of the crime" of causing two deaths in the same criminal episode—*i.e.*, aggravated murder. The Court of Appeals agreed. *Kyger*, 305 Or App at 557. That court first noted that it had already decided, in *Quintero*, that the crime of attempted aggravated murder may consist of "'intentionally engag[ing] in conduct constituting a substantial step toward the murder of more than one person.'" *Id.* at 553 (quoting *Quintero*, 110 Or App at 257). The court went on to explain that *Quintero* was consistent with the statutory text:

> "When [the] definition of attempt is considered in connection with the particular crime of aggravated murder as defined by ORS 163.095(1)(d), those provisions easily capture a person who, with the conscious objective of killing multiple persons in the same criminal episode, takes steps in furtherance of that objective, even if the person ultimately succeeds in killing no one[.]"

*Kyger*, 305 Or App at 554.

In challenging that conclusion, defendant reprises his argument that the crime of attempted aggravated murder requires the aggravating circumstance to "exist," and that an indictment fails to allege the crime if it charges only that a defendant intended to bring the aggravating circumstance about.

At the outset, we note the way in which defendant has framed the issue for our review. Defendant agrees that the crime of attempt has two elements: (1) intentional conduct that (2) constitutes a substantial step toward the commission of the crime. Defendant then states: "Only the first requirement is at issue in this case. The question is how the intentional conduct in the attempt statute relates to the various elements of the substantive crime."

Although defendant asserts that only the "intentional conduct" element is at issue, defendant does not dispute that all of the charged conduct *was* intentional. That is, defendant has not argued that his separate acts of attacking both victims with a razor blade were committed without an intent to kill. Rather, we understand defendant's argument to be that the state's allegation that he intentionally tried to kill both victims is insufficient, because the crime of attempted aggravated murder under ORS 163.095(1)(d) requires an element that was not alleged here (*i.e.*, that multiple victims died).

At its core, defendant's argument depends on the proposition that a "circumstance" element, which must exist (like any other element) for a substantive crime to be completed, must also exist for an *attempt* crime to be completed. Defendant derives that proposition from several sources. First, he points out that the mental-state definitions in ORS 161.085(7) associate "intent" with conduct or result elements; in contrast, circumstance elements are associated with the mental states of knowledge, recklessness, and criminal negligence in ORS 161.085(8), (9), and (10). Defendant further points out that those provisions refer to a circumstance as either existing or not. Thus, defendant reasons, a person can act with knowledge that a circumstance exists or be reckless or criminally negligent as to whether it exists, but the concept of "intending" a circumstance is unknown

to Oregon criminal law. Accordingly, defendant asserts, the "intentional conduct of the attempt statute does not apply to the circumstance elements of a crime."

Defendant further supports his argument with citations to legislative history. He relies, as this court has done, on the commentary that accompanied the 1971 Criminal Code revision. *See Kimbrough*, 364 Or at 77. From the commentary, defendant draws two observations. First, the commentary to the attempt statute specifies that the intent requirement is satisfied where "the defendant intends to engage in the conduct which will constitute the crime," and that the defendant "need not necessarily contemplate all of the surrounding circumstances included in the definition of the crime." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 54, 51 (July 1970). Thus, in defendant's words, "attempt crimes address the conduct elements of a substantive crime—that is what the defendant must intend."

Second, the commentary explains that the defendant must "intend to perform acts and attain a result which, if accomplished, *would constitute the crime*." *See id.* (internal quotation marks omitted; emphasis added). Defendant takes the italicized phrase to mean that a person is guilty of attempt only if, had his intended course of conduct been completed, the crime would have been accomplished, which "can only occur if the circumstance element of the crime exists."

Finally, defendant relies on *Turnidge*, which, as noted above, held that the death of multiple victims in ORS 163.095(1)(d) is a "circumstance" that requires no separate proof of mental state. 359 Or at 504. In defendant's view, that supports the understanding that a person's intent as to that circumstance is "irrelevant" for purposes of attempt liability, from which it follows that, just as the circumstance must exist for a person to be guilty of the completed crime of aggravated murder, it must also exist for the crime of attempt.

The two building blocks of defendant's argument—first, that the mental state of "intent" is not ordinarily

associated with "circumstance" elements of offenses; second, that a circumstance element must "exist" in order for a substantive crime to be completed—are correct statements of the law as far as they go. They fail, however, to support defendant's ultimate claim that the *inchoate* crime of attempt cannot occur unless a circumstance element of the underlying offense actually exists.

Defendant's contention is contrary to both the text and the history surrounding the attempt statute, which show that the focus of attempt liability is entirely on an actor's *criminal purpose* as manifested by his or her conduct, and not on whether any element of the crime has been completed or whether the crime is impossible or unlikely to occur.

Textually, the attempt statute is not worded in a manner that requires the completion or existence of any element of an offense. It requires only that an actor have "intentionally" engaged in "conduct" that constitutes a "substantial step" toward the commission of the crime. ORS 161.405. "Conduct" is defined in the Criminal Code as "an act or omission and its accompanying mental state." ORS 161.085(4). An "act" is defined as "a bodily movement." ORS 161.085(1). Thus, an act or series of acts, when accompanied by the mental state of "intentionally," is sufficient to create attempt liability if it amounts to a substantial step toward completing a criminal offense, which is different from saying that one or more elements of the offense must exist. Moreover, the attempt statute is silent as to the existence or nonexistence of "circumstances." *See* ORS 161.405. If an actor takes sufficient intentional steps toward achieving a defined criminal objective, the text of the *attempt statute* is unconcerned with whether circumstances or other elements necessary to the completion of the crime exist.

That understanding is reinforced by the statute's context and legislative history. Context includes the impossibility statute, ORS 161.425, which we construed in *Kimbrough*. There, we explained that "[t]he plain text of ORS 161.425 provides that attempt liability does not rest on the actual likelihood of the crime occurring." *Kimbrough*, 364 Or at 74. Rather, attempt liability rests on charging and

proving that a defendant "'purposely d[id] \*\*\* anything which, under the circumstances *as he believes them to be*, is a substantial step in a course of conduct planned to culminate in his commission of the crime.'" *Id.* at 74-75 (quoting Model Penal Code, § 5.01(1)(c) (Tentative Draft No 10, 1960) (emphasis in *Kimbrough*)). That understanding of how the attempt statute and the impossibility statute work together is difficult to square with the idea that a circumstance must actually exist.

Defendant argues that the term "circumstances" in ORS 161.425, and our discussion of it in *Kimbrough*, is meant to refer to "surrounding facts" or "circumstances in the world" rather than to circumstance "elements" of crimes. That is, as we understand defendant's argument, he contends that a person *can* be liable for attempt if he or she has a misunderstanding about "facts" (such as whether the intended victim of a shooting was in a certain location, or whether a wallet that was the target of theft was in a particular pocket). But, in defendant's view, a person cannot be liable for attempt if a circumstance *element*—*i.e.*, one included in the statutory definition of the crime that is necessary for the completion of that crime—does not exist.

Defendant further illustrates that distinction through the use of hypotheticals, such as the crime of unlawful delivery of a controlled substance within 1,000 feet of a school, ORS 475.904. He argues that, because the delivery of drugs is the prohibited conduct and the proximity to a school is an attendant circumstance, a person *can* be guilty of attempt if (1) he attempts to deliver drugs, and (2) a school actually exists within 1,000 feet of where the attempt occurred, but the person *cannot* be guilty of attempt if he (1) actually delivers drugs, and (2) *mistakenly believes* he is doing so within 1,000 feet of a school. That is because, as defendant puts it, "the circumstance element [of the offense] does not exist."

For several reasons, we reject defendant's proposed distinction between mistakes about "facts" and missing "circumstances." First, analytically, no such distinction is easily drawn. The status of a victim as a police officer, for example, is both a "surrounding fact" *and* an attendant circumstance that elevates murder to aggravated murder under ORS

163.095(2)(a)(A). A circumstance element is simply a fact that the legislature has imbued with legal significance.

Second, defendant's argument is inconsistent with the discussion of "impossibility" that surrounded the enactment of the attempt statute in 1971. Defendant begins with the correct proposition that the absence of a circumstance element makes it legally impossible to complete a substantive crime. From there, defendant reasons that it should not be possible to "attempt" the crime, because, without the existence of the necessary circumstance, the criminal objective could not have been achieved even if the actor had completed his intended course of conduct.

Attempt liability, however, is not concerned with whether the criminal objective could have been achieved. It is concerned with the demonstrated dangerousness of the actor.

We return, as we have before, to the commentary that accompanied the 1971 Criminal Code revision. *Kimbrough*, 364 Or at 77 ("[W]e look principally to the draft commentary provided by the Criminal Law Revision Commission to illuminate [the legislature's intended] meaning."). In the commentary to the "impossibility" section (now codified at ORS 161.425), the drafters stated unequivocally that neither factual nor legal impossibility is a defense to attempt liability:

> "The law of attempt is now recognized as being more properly directed at the dangerousness of the actor—the threat of the actor's personality to society at large. The emphasis in the older view was that the nature of the act should be determinative of the guilt of the actor. Pursuant to this view it has been held, for instance, that if an actor tried to receive property he believed stolen when the property was in fact not stolen, his act was not legally criminal because it was impossible to commit the crime of attempt to conceal that which was not stolen. His act was viewed objectively as no threat to society because it was a 'legal impossibility.' Yet viewed from the subjective standpoint of the actor, the intent and purpose were criminal and but for the actor's mistaken understanding of the circumstances the crime would have been committed.

"The Model Penal Code comment on situations of this kind is well expressed as follows:

"'In all of these cases (1) criminal purpose has been clearly demonstrated, (2) the actor has gone as far as he could in implementing that purpose, and (3) as a result, the actor's "dangerousness" is plainly manifested.'

"This section would make the actor liable in all 'impossibility' situations. This includes in addition to the 'legal' impossibility cases the so-called 'factual' impossibility situations. The case where an actor attempts to steal from the pocket of another when the pocket is empty or where the actor shoots into an empty bed believing it occupied by the intended victim are common examples of 'factual' impossibility. Also encompassed within this section is a prohibition on a defense of 'inherent' impossibility. Thus it would be no defense if black magic is the means chosen for the attempt, *e.g.*, the actor makes a doll and repeatedly stabs it with pins believing that the intended victim thereby will be killed. Although the means chosen is clearly ineffective the personality of the actor is potentially dangerous. In such cases it may very well occur to the black magic practitioner, after repeated failures of legerdemain, that other more effective means to kill are available.

"* * * * *

"Though the Oregon law that factual impossibility is no defense seems settled * * *, no Oregon decision was found dealing with legal impossibility. The two are not really different as a policy matter. The draft section, like all the other modern codes, treats legal impossibility the same as factual impossibility and allows neither as a defense."

Commentary § 55 at 52-53 (internal citations omitted).

Thus, it is clear that the impossibility of committing a substantive crime, whether because of a mistaken belief, a failed circumstance, or an "ineffective" means, has little or no bearing on whether a person who tries to commit that crime is someone whom the legislature intended to punish under the attempt statute.[5] If that person intentionally engages in

---

[5] The drafters noted one caveat to the rule that impossibility is not a defense. To be guilty of attempt, the actor must have an objective that is, in fact, criminal. Thus, a person who believes he is breaking the law by engaging in conduct that is entirely legal has committed no crime, not even attempt. Commentary § 55 at 53 ("If,

conduct manifesting a criminal objective, then the legislature intended for that person to be guilty of attempt, and it is no defense that the criminal objective was impossible or unlikely to be realized.

Defendant's distinction between a mistake about facts and a missing circumstance is, therefore, untenable. No such distinction is supported by the commentary, which links attempt liability to whether the actor manifested a dangerous intent, not to the particular reason why the actor failed in the criminal objective. Commentary § 55 at 52. Indeed, the commentary strongly indicates that the reason is irrelevant. *Id.* at 53.

Defendant's argument relies on additional propositions that are not supportable. It presumes, as discussed earlier, that circumstance elements cannot be intended or attempted. Practically speaking, that is not true. Defendant is correct that the definitions in ORS 161.085 contemplate that a circumstance will exist or not, and that they do not contemplate a person acting "intentionally" as to a circumstance. *See* ORS 161.085(7) (defining "intentionally" as applying to conduct or result elements, not to circumstance elements). Those definitions, however, are generally written with a view toward substantive crimes, and they make clear that a person need not have intended that a circumstance exist in order to complete a crime. The other authorities on which defendant relies similarly show that a person *need not* intend or contemplate an attendant circumstance to be criminally liable. That does not mean that a person *cannot* intend to bring about a circumstance. Common sense tells us otherwise. A person who intends to sell drugs to children can certainly locate what he believes to be a school building and then, for that reason, conduct his operations across the street. In that case, it would be difficult to deny that he has intended for the circumstance element of the offense to exist, even if the building turns out not to be a school. As another example, a review of the various attendant circumstances in the aggravated murder statute shows that, although some

according to his beliefs as to facts and legal relationships, the result desired or intended is not a crime, the actor will not be guilty of an attempt even though he firmly believes that his goal is criminal.").

of them relate to matters like the status or age of the victim, others concern matters that plainly would be within a defendant's control, such as whether the murder was committed in exchange for money, ORS 163.095(1)(a), (b); whether it was connected to the "intentional maiming or torture of the victim," ORS 163.095(1)(e); and whether it was committed "by means of an explosive," ORS 163.095(2)(c). As those examples illustrate, the designation of an element as a circumstance does not mean that it is beyond a person's ability to influence, create, or intend.[6]

Finally, although a person need not intend a circumstance to be criminally liable, it hardly follows that the legislature did not want attempt liability to attach to someone who *did* intend that circumstance. The attempt statute is concerned with what a person tried to do. If the legislature defines a crime and then identifies circumstances that make the crime particularly heinous, a person who takes deliberate steps to bring those circumstances about has demonstrated the heightened dangerousness that the legislature sought to deter and punish by creating the aggravated version of the crime. The failure to produce those circumstances means that the person cannot be guilty of the completed crime, but it would frustrate the purpose of the attempt statute to ignore the effort and conclude that the person is not guilty even of the inchoate crime. Defendant has not explained how the legislature's intent would be served by such a result.

In this case, defendant undisputedly had the objective of killing multiple victims in the same criminal episode and engaged in intentional conduct toward that end. Accordingly, he attempted to commit the crime that the legislature has defined in ORS 163.095(1)(d). The crime of attempt was not rendered impossible, in retrospect, because of the happenstance that neither victim died.

---

[6] *Turnidge*, on which defendant relies, is not to the contrary. What *Turnidge* established is that the state may prove the aggravating circumstance of "more than one murder victim" without showing that the defendant intended to bring it about. 359 Or at 504. That aspect of our discussion in *Turnidge* was unrelated to attempt crimes, and the notion that defendant draws from it—that it is not *possible* to "intend" or "attempt" a circumstance—does not follow.

In short, the state's theory of attempted aggravated murder is a viable one, and it was properly charged. We repeat the wording of the charges here:

"The defendant, on or about April 25, 2016, in Clackamas County, Oregon, did unlawfully and intentionally attempt to cause the death of [Z], another human being, defendant having unlawfully and intentionally attempted to cause the death of [G], an additional human being, in the course of the same criminal episode.

"The defendant, on or about April 25, 2016, in Clackamas County, Oregon, did unlawfully and intentionally attempt to cause the death of [G], another human being, defendant having unlawfully and intentionally attempted to cause the death of [Z], an additional human being, in the course of the same criminal episode."

Each count states the required elements of attempted aggravated murder under ORS 161.405 and ORS 163.095(1)(d): (1) intentional conduct (2) that constituted a substantial step toward causing the deaths of more than one victim in the same criminal episode. The state did not need to use any specific phrases or terms to adequately convey the charge in the indictment. ORS 132.540(4)[7] ("Words used in a statute to define a crime need not be strictly pursued in the indictment, but other words conveying the same meaning may be used."). The occurrence of multiple deaths is required for the completed crime of aggravated murder, but it is not required for the inchoate crime of attempted aggravated murder. Defendant's argument that the indictment lacked a necessary element is incorrect.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[7] ORS 132.540 has been amended since defendant committed the crime. Those amendments did not change the text of subsection (4), nor do they affect our analysis.